PEOPLE v. CRONK

1. CRIMINAL LAW—VENUE—ELEMENTS OF CRIME.
   Venue is not an element of a crime.

2. HOMICIDE—MURDER—VENUE—EVIDENCE—STATEMENT BY DEFEND-
   ANT—PRELIMINARY EXAMINATION.
   Refusal of examining magistrate to suppress statements made
   by defendant, without questions being asked, to the effect
   that he had stabbed a person to death at a certain place
   held, proper; the statements sufficiently established the venue
   of the crime so that defendant could properly be bound over
   for trial on charge of murder (CL 1948, §§ 750.316, 750.317).

3. SAME—MURDER—CONFESSION—VOLUNTARINESS—DETERMINATION.
   Submission to the jury by the trial judge of the question of
   whether defendant's confession of murder was voluntary or
   not held, not reversible error where the trial judge first made
   his own determination, after a separate hearing, that the
   confession was voluntary (CL 1948, §§ 750.316, 750.317).

Appeal from Livingston, Carland (Michael), J.
Submitted Division 2 October 11, 1968, at Lansing.
(Docket No. 4,275.)    Decided December 24, 1968.
Leave to appeal denied April 25, 1969.    See 381
Mich 818.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law §§ 398, 399.
[3] 29 Am Jur 2d, Evidence §§ 582–590.
   Duty of court to institute preliminary investigation as to volun-
   tary or involuntary character of confession.    102 ALR 605.
   Constitutional aspects of procedure for determining voluntariness
   of pretrial confession,    1 ALR3d 1251,

Donald James Cronk was convicted of second degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Charles B. Gatesman,* Prosecuting Attorney, for the people.

*Donald W. Grant,* for defendant.

VANDER WAL, J. On November 24, 1966, shortly after 6:30 p.m., Ruth Elaine Stoodley was found dead of a stab wound. Her body was found in a 1960 red Falcon located behind Webbwood Inn in Lakeland, Livingston county, Michigan, by Helmut Schaefer, a trooper with Michigan state police.

Shortly before this discovery, defendant had entered Webbwood Inn and stated to witnesses that he had killed Ruth. This disclosure resulted in a telephone call to the Brighton state police post, to which Schaefer and his partner, trooper Griffiths, responded. On arrival at Webbwood and before Schaefer said anything to defendant, the latter stated, "I killed her, and she's around the corner in the car. She's dead. Take me away." Defendant was arrested on a charge of murder and he was arraigned that same evening before the municipal judge at Howell, Michigan.

On December 5, 1966, defendant's attorney filed a petition for a sanity hearing pursuant to CLS 1961, § 767.27, in the Livingston county circuit court. On December 9, 1966, that court appointed Drs. Yoder and Gould to make the examination required by the statute. After examination and hearing, on March 9, 1967 the circuit judge entered an order finding defendant capable of understanding the object of the proceedings against him, of comprehending his own condition in reference to such proceedings and

of assisting in his own defense in a rational and reasonable manner.

A preliminary examination was held March 17 and 23, 1967 and concluded May 5, 1967. Defendant was bound over to circuit court for trial on a charge of murder. CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548). On May 10, 1967, an information was filed charging defendant with the same offense. At arraignment that same day, defendant stood mute, and a plea of not guilty was entered for him.

On June 15, 1967, defendant filed motion to suppress confessions and admissions, to quash the information because venue was not proved in Livingston county, and to strike from the information any reference to the crime of first-degree murder. Counsel stipulated that the trial court could determine the motion to suppress and to quash on the basis of the transcript from the preliminary examination. By opinion that same day, the trial judge denied the motion to quash and the motion to strike. By the same opinion, the trial judge suppressed all confessions and admissions made to police, except those volunteered by defendant and not in response to questions by the police. This ruling was based on *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974).

On June 21, 1967, defendant filed notice of defense of insanity as required by CL 1948, § 768.20 (Stat Ann 1954 Rev § 28.1043), and indicated that Drs. Yoder and Gould were the witnesses to be called to establish such defense. On June 23, 1967, the prosecuting attorney petitioned for further examination of defendant on the issue of his sanity. Such examination was ordered and Drs. Yoder and Gould were appointed to conduct it. Dr. Yoder testified at trial.

Defendant's jury trial resulted in his conviction of second-degree murder, CL 1948, § 750.317 (Stat Ann 1954 Rev § 28.549), and he was sentenced to prison for life. His appeal raises 6 claims of error. Before stating and examining these claimed errors, it is noted that the record establishes beyond peradventure that Ruth Elaine Stoodley died as the result of a stab wound from a knife wielded by defendant, and that defendant readily admitted the killing soon after the event in volunteered statements to witnesses and to a state police officer. At trial, defendant did not deny the killing, but said, "If I did, I do not know."

Defendant first questions the sufficiency of the evidence of his mental capacity to stand trial. The testimony of the examining doctors fully supports the finding of the trial court that defendant was competent to stand trial, and without questioning such finding, defendant proceeded through the preliminary examination and trial. The trial record corroborates the prior finding of the trial judge as to defendant's competence. In spite of prodigious consumption of alcoholic beverages, defendant's memory for events and details is remarkable right up to a point shortly before the killing, when he acquired amnesia. We find no error on this point.

On the basis that venue was not proved at the preliminary examination, defendant claims it was error not to quash the information. This assertion of error is closely allied to defendant's next claim that his rights under the Fifth Amendment (US Const, Am 5) were violated by the trial court's denial of defendant's motion to suppress his admissions to trooper Griffiths.

The following testimony of trooper Schaefer appears at page 66 of the preliminary examination transcript:

"*Q.* Then following that, what did you do?

"*A.* From there, I went back to the patrol car. The defendant, Mr. Cronk, was there in the car, and I got into the car and advised him that he was under arrest for murder. At this time, I also advised him he did not have to say anything, that anything he said would be used in court, that he had a right to an attorney and if he couldn't afford one, an attorney would be provided by the court.

"*Q.* Then did you question him or what did you do?

"*A.* I again advised Mr. Cronk of his rights—he was emotionally upset, and I advised him of his rights slowly so he would fully understand them. Several times I asked him if he understood, and he indicated he did by nodding his head and saying 'Yes' in a very quiet tone of voice. After I finished telling him the second time, he again stated   *   *   *

"*Mr. Grant:* You're going to tell   *   *   *

"*Mr. Gatesman:* Just a minute. Did you ask questions, or did he just state some words?

"*A.* I asked some questions, but before I asked any questions, he stated, 'I drove thousands of miles to find her, and we were up at Fife Lake and she left, and I drove thousands of miles and I finally found her. I killed her. O.K., forget it, I had no alternative, I killed her. But I loved her.'

"*Q.* This was—he said this without your asking any questions?

"*A.* Yes.

"*Q.* At any time did he tell you where he had killed her?

"*A.* He said in Brighton.

"*Q.* What did you do following this time when you again advised him of his rights?

"*A.* He again made the comment, 'I killed her.' I asked him where it occurred and he stated, 'In the A&P parking lot in Brighton. I stabbed her with a hunting knife.' He said the knife was on the floor of the car. After he stabbed her, he said he drove

to Webbwood Inn and contacted Maxine and told her 'I killed Ruth. Call the police.' "

. A short time after the events testified to above, at Brighton state police post, defendant volunteered the information to trooper Griffiths that the stabbing occurred in the A&P parking lot in Brighton. Griffiths had not questioned defendant.

On the basis of *Clewis* v. *Texas* (1967), 386 US 707 (87 S Ct 1338, 18 L Ed 2d 423), defendant contends the foregoing admission by defendant to Griffiths should have been suppressed, and without it, there was no proof of venue at the preliminary examination. Without accepting defendant's assertion that there is no other proof of venue, we hold the *Clewis* doctrine inapplicable here because of controlling factual distinctions.

Here, in the space of 3 or 4 hours, defendant voluntarily admitted to witnesses and to 2 state police officers that he killed Ruth Stoodley. Such admissions are admissible under *Miranda, supra*. The fact that the trial judge suppressed defendant's admission to trooper Schaefer of the place of the crime because it was in response to a question by the trooper, does not, in our view, so infect a similar voluntary statement to trooper Griffiths that the latter must also be suppressed. Venue is not an element of the crime. We conclude that there was evidence of venue at the preliminary examination, the motion to quash was properly denied and no Fifth Amendment rights of defendant were violated. .

Defendant says he was denied due process of law under US Const, Am 14, because the trial court submitted to the jury the question of the voluntariness of his confessions. By separate hearing, the trial judge determined the voluntariness of defendant's confessions and suppressed those he found

involuntary under the *Miranda* doctrine. This satisfies *People* v. *Walker* (On Rehearing, 1965), 374 Mich 331. It was unnecessary to submit the question of voluntariness to the jury, but the fact that it was done does not constitute reversible error. In fact, it could have been to defendant's advantage.

Finally, defendant claims 2 reversible errors in the instructions, first relating to venue and the second relating to the question of insanity. We have read the complete charge and we find no error.

Affirmed.

QUINN, P. J., and HOLBROOK, J., concurred.