[Crim. No. 15953.  Second Dist., Div. Five.  Feb. 25, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
BENNY GILBERT GARCIA, Defendant and Appellant.

**COUNSEL**

Howard C. McArdle, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Michael A. Heaman, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**AISO, J.**—By information, defendant Garcia and a codefendant, Manuel Robert Ruiz, were charged in count I with illegal possession of heroin

(Health & Saf. Code, § 11500), a felony, and in count II with illegal use of narcotics (Health & Saf. Code, § 11721), a misdemeanor.[1]

By amendment to the information, defendant was further charged with three prior felony convictions, each one for a violation of section 11500 of the Health and Safety Code. Defendant pleaded not guilty to the current charges and denied the allegations as to the priors. He duly waived jury trial as to all issues including determination of the prior felony convictions charged. His "motion for dismissal" made at the conclusion of the People's case was denied as to both counts and the court found him and co-defendant Ruiz guilty upon both counts. The court made no finding as to the first prior charged,[2] but found the second and third to be true.

Defendant's motion for a new trial was denied, criminal proceedings were adjourned, and defendant was referred to Department 95 of the court, which subsequently ordered him committed to the California Rehabilitation Center for 90 days pursuant to section 3051 of the Welfare and Institutions Code. Upon resumption of criminal proceedings, the court struck the second prior conviction with the prosecution's consent. Probation was denied. Defendant was sentenced to state prison on count I and to 90 days in the county jail on count II, the sentences to run concurrently with each other and concurrently with a sentence on a conviction for which defendant was then on parole. The appeal is from the judgment.

## I.

Defendant urges that the evidence is insufficient to sustain (1) the conviction on count I (illegal possession of heroin) and (2) the finding that the third alleged prior felony conviction is true. He further claims that as to count II (illegal use of narcotics), the trial court erred in receiving his extrajudicial statement, which clearly admits his having had a narcotic injection within the venue of the trial court on the day of his arrest, contending that venue was a part of the corpus delicti incumbent upon the People to first establish by evidence *aliunde* defendant's statement.

After reading the record and considering the authorities applicable to the points defendant has raised on appeal, we have concluded that the judgment should be affirmed.

## II.

Donald L. Mauro testified: He was a uniformed officer of the Los Angeles County sheriff's office, working the "P.M." shift on November 8,

---

[1]Since this appeal concerns Garcia only, matters pertaining to codefendant Ruiz not material to defendant Garcia's appeal are omitted.

[2]This is tantamount to a finding that the allegation is not true. (*People* v. *Huffman* (1967) 248 Cal.App.2d 260, 261 [56 Cal.Rptr. 255].)

1967, together with his partner officer, David Cushner. He was the passenger officer of a radio patrol car. They had just turned onto Kern Avenue from Olympic Boulevard and were headed northbound on Kern when he saw defendant and Ruiz in the darkened and dimly lit doorway of an apartment at 1142 South Kern Avenue. The premises appeared to be an apartment house. The doorway opened directly onto the sidewalk. The defendant and Ruiz were faced towards a stairway, which commenced about 3 feet inside the door and led upstairs, "huddled together with their heads together as if bent over something." No other persons were in the area.

When Mauro hailed them from his radio car, at a distance of 10 to 12 feet, defendant and Ruiz ran up the stairway. Mauro alighted from the radio car and ran up the stairs after them.[3]

The stairway had 13 steps and then bifurcated to the left and right. There were 3 steps to the left leading to an apartment door. On the right there were 4 steps which led to a platform or landing about 5 feet wide which led in turn to an apartment door.

The officer lost sight of defendant and Ruiz momentarily as they went up the darkened stairway. Half-way up the stairway, the officer turned on his five-cell flashlight. As he pursued the two and reached the fourth or fifth stair from the top, he heard a banging on a door and a rattling of a door glass pane coming from the top of the stairway to his left. Following a momentary cessation of this "commotion," the officer then heard something "slap the door to [his] right." "[T]here was a slight pause, and then I heard something hit the door on the right side." The officer shined his flashlight in the direction from which this "slapping sound"[4] came and observed a cellophane packet containing a whitish powder.[5] It was lying on the landing just in front of the apartment door to the right. There were no persons in the area other than defendant, Ruiz, and the officers. There was no other debris on the landing. The doors leading to the apartments, both on the left and the right, were locked. At the time the officer noticed the white cellophane bag and contents, defendant and Ruiz were 6 to 7 feet away from it. The officer did not see the cellophane bag leave either defendant's or Ruiz' hand. After the officer retrieved the cellophane bag, the defendant and Ruiz were removed from the stairway area and formally placed under arrest at the bottom of the stairway.

---

[3]Legality of the officer's entry into the building was not questioned in either the trial court or in the briefs. From the evidence, it would appear that this portion of the building was a common lobby not under the exclusive possession of any tenant.

[4]Describing the sound, the officer further testified: "It sounded as if something had hit the wall to the right."

[5]Later determined to be heroin.

At the station, Officer Mauro observed "scab-like formations" on both the defendant's and Ruiz' arms.

Jim Henry, stipulated to be "an expert in the ways and means of narcotics, especially the way heroin is used, administered and packaged in the County of Los Angeles," testified: He was a Deputy Sheriff of Los Angeles County assigned to the Narcotics Bureau. He examined the bodies of both defendant and Ruiz on November 9, 1967, the day following the arrest, at the interrogation room of the East Los Angeles sheriff's station. Defendant had 10 puncture wounds, located over the veins, in his "left elbow area and above," which Henry opined to have been caused by the illegal injections of a narcotic. Following his giving defendant his *Miranda*[6] rights, defendant freely and voluntarily stated "that he had been using heroin for 10 years, and that he had had his last injection on the 8th day of November, 1967, using one cap of heroin, *at a friend's house in East Los Angeles.*" (Italics added.) Defendant, in his opinion, was not under the influence of any narcotics at the time of this examination and conversation.

Defendant's counsel later moved to have this statement stricken, particularly with reference to count II, contending that the statement was inadmissible since the corpus delicti of the misdedemanor crime of illegally using narcotics had not been made out, and that the statement could not be used to establish "jurisdiction" or "venue."

Deputy Sheriff Henry also testified that "[o]n the inner left elbow and on the left hand, back of the left hand [of Ruiz], there were a total of seven puncture wounds." Henry was of the opinion that these had been caused by the "illegal injection of a narcotic."

Neither defendant nor his codefendant presented any evidence in their defense.

### III.

Defendant contends that the court's finding that he and Ruiz had joint control of the contraband finds insufficient support in the evidence. ■ To be guilty of a violation of section 11500 of the Health and Safety Code, the evidence must show that a defendant had actual or constructive possession of a narcotic, knowing of its presence and its narcotic nature. (*People* v. *Groom* (1964) 60 Cal.2d 694, 696 [36 Cal.Rptr. 327, 388 P.2d 359]; *People* v. *Redrick* (1961) 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255].) However, those essential elements may be established by circumstantial evidence and reasonable inferences to be drawn therefrom. (*People*

---

[6]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

v. *Groom, supra,* 60 Cal.2d 694, 696-697; *People* v. *Boddie* (1969) 274 Cal.App.2d 408, 411 [80 Cal.Rptr. 83]; *People* v. *Villanueva* (1963) 220 Cal.App.2d 443, 450 [33 Cal.Rptr. 811].) ■ Moreover, "[i]t is not necessary that an accused be shown to have had exclusive possession of the contraband narcotics. In other words, two or more persons may be so closely associated in the handling of a narcotic that their possession of it may be deemed joint." (*People* v. *Peloquin* (1969) 270 Cal.App. 2d 610, 612 [75 Cal.Rptr. 898]; accord: *People* v. *Toms* (1958) 163 Cal. App.2d 123, 128 [329 P.2d 90]; *People* v. *Romero* (1958) 161 Cal.App.2d 404, 405, 406 [327 P.2d 205].)

■ The rules governing appellate review of a contention that the evidence is insufficient to support a conviction are as summarized in *People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321]:

"This court must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People* v. *Sweeney,* 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049].) ■ If the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. (*People* v. *Robillard,* 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; *People* v. *Love,* 53 Cal.2d 843, 850-851 [3 Cal.Rptr. 665, 350 P.2d 705].) ■ The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt is established beyond a reasonable doubt. (*People* v. *Hillery,* 62 Cal.2d 692, 702-703 [44 Cal.Rptr. 30, 401 P.2d 382].) ■ [¶] Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the verdict of the jury, it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it. (*People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911].)"

■ Viewing the circumstances surrounding the finding of the cellophane packet containing the heroin, a trier of fact could infer that either defendant or Ruiz threw the packet away when they were unable to gain entrance to the apartment to the left of the stairway. Defendant and Ruiz were huddled together at the foot of the stairway and jointly fled up the stairs when Deputy Sheriff Mauro called to them. Both defendant and Ruiz bore evidence, on their respective arms, of being users of narcotics. Defendant

admitted to having had his last injection of heroin on the date of his arrest (November 8, 1967) in the same part of Los Angeles (East Los Angeles) where the arrest took place. The finding of joint possession is thus adequately supported by the evidence.

### IV.

Citing *People* v. *Garcia* (1953) 122 Cal.App.2d Supp. 962 [266 P.2d 233], defendant contends that venue cannot be established by his extrajudicial statement. In that case, however, the accused's statement merely admitted "a fix" about two months prior to the statement. It did not include the *locus delicti* of that "fix." Here, defendant's statement was that he "had had his last injection on the 8th day of November, 1967, using one cap of heroin, at a friend's house in East Los Angeles."

Since venue is not part of the corpus delicti of a crime (*State* v. *Dombrowski* (1969) 44 Wis.2d 486, 501-502 [171 N.W.2d 349, 357]; *Dean* v. *United States* (8th Cir. 1957) 246 F.2d 335, 338; *Hopson* v. *State* (1957) 201 Tenn. 337, 343 [299 S.W.2d 11, 14]; *People* v. *Strook* (1932) 347 Ill. 460, 466-467 [179 N.E. 821, 823]; *Commonwealth* v. *Marshall* (1926) 287 Pa. 512, 520 [135 A. 301, 304]; *Commonwealth* v. *Dolph* (1949) 164 Pa. Super. 415, 420 [65 A.2d 253, 255]; *Morris* v. *State* (Okla.Crim. 1961) 363 P.2d 377, 379; 22 C.J.S., Criminal Law, § 173, p. 431), it has been held that it may be established by an accused's own admission as to the locus of the crime (*People* v. *Cronk* (1969) 15 Mich.App. 309, 314 [166 N.W.2d 497, 500]). While we have not found any California case on this precise point, and counsel have cited none, we feel that the *Cronk* case is sound upon principle.

### V.

Contrary to defendant's final contention, the finding that the third prior felony conviction charged against defendant was true also finds adequate support in the evidence. A superior court file No. 227889 was introduced in support of the allegation. While it is true that the name of the defendant in case No. 227889 is given as Benjamin Gilbert Garcia, in contrast to the name Benny Gilbert Garcia by which defendant is charged in the instant case, the trial court considered: the similarity of names (*idem sonans*) as it was permitted to do (*People* v. *Sberno* (1937) 22 Cal.App.2d 392, 401-402 [71 P.2d 274]; and see *People* v. *Hill* (1967) 67 Cal.2d 105, 121 [60 Cal.Rptr. 234, 429 P.2d 586], cert. denied 389 U.S. 1009 [19 L.Ed.2d 607, 88 S.Ct. 572]; *People* v. *Mason* (1969) 269 Cal.App.2d 311, 313-314 [74 Cal.Rptr. 708]; *People* v. *Luckett* (1969) 1 Cal.App.3d 248, 253 [81 Cal.Rptr. 539]); the correlation of the age of the defendant in case No. 227889 with the age of the defendant here; and identity of the crimes

committed (*People* v. *Griffin* (1962) 209 Cal.App.2d 557, 561 [26 Cal.Rptr. 311]; *People* v. *Sberno, supra,* 22 Cal.App.2d 392, 402). Applying the rules applicable upon appeal upon a claim of insufficiency of the evidence set forth under part III above, we hold the finding by the trial court as to the third prior felony conviction alleged, to be sufficiently supported by the evidence.

VI.

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.