[Crim. No. 15342. Second Dist., Div. Five. Oct. 28, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
SAMUEL LUCKETT, Defendant and Appellant.

## COUNSEL

Paul A. Jacobs, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert P. Samoian, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—After a jury trial defendant was convicted of a violation of section 11530.5 of the Health and Safety Code (possession of marijuana for sale). The information also charged a prior conviction for possession of marijuana (Health & Saf. Code, § 11530) suffered in 1962. Defendant pleaded not guilty and denied the prior. The jury found defendant guilty and the prior to be true. The finding with respect to the prior made defendant subject to increased punishment. (Health & Saf. Code, § 11530.5.) He was sentenced to state prison for the term prescribed by law and appeals.

Before the first witness testified there was a lengthly conference in chambers. The subject of the discussion was proof of the prior conviction. The defense made it clear that it was going to put the prosecution to strict proof. It also demanded that the prosecutor prove that defendant was "properly represented at the time." (*In re Dabney,* 71 Cal.2d 1, 6 [76 Cal.Rptr. 636, 452 P.2d 924]; *People* v. *Coffey,* 67 Cal.2d 204, 214-219 [60 Cal.Rptr. 457, 430 P.2d 15]; *In re Woods,* 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913].) During the discussion the prosecutor expressed a fear that the failure of the Evidence Code to say anything about the disputable presumption contained in subdivision 25 of former section 1963 of the Code of Civil Procedure ("identity of person from identity of name") made it incumbent on the prosecution to prove affirmatively that the Samuel Luckett who had been convicted in 1962 was the same Samuel Luckett now before the court.

It also appeared during the conference that, apart from proving the prior

conviction for the purpose of substantiating the charge that defendant had suffered such a conviction, the prosecution intended to present evidence of the prior and evidence concerning certain statements the defendant had made when arrested in 1962 to prove two elements of the present charge: knowledge of the narcotic nature of the substance possessed by defendant and its possession for sale, rather than for some other purpose. In this connection the prosecution produced, in the absence of the jury, the officer who had arrested defendant in 1962. He testified to a street confrontation during which he patted defendant for weapons and came upon a bulge, which he then patted some more. He asked: "What is that?" and defendant answered: "That's weed, man."

In the discussion preceding the officer's testimony the prosecutor had advised the court that the defendant had later said that he found the "weed" at a cafe, that he did not use marijuana but was going to roll it into sticks for the purpose of sale, since he needed the money. That part of defendant's statement was not testified to by the arresting officer, as the prosecutor specifically disclaimed any intention to present it before the jury. His reason for eschewing it was that defendant's arrest had intervened and there had been no exchange of the constitutional amenities common since *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

After hearing the evidence the court ruled that it would not admit even the first part of the confession. It felt that under the circumstances described by the officer "there is grave doubt as to whether or not [he] had the right to stop him at that time and search him." It is not clear, however, whether the ruling was based on a definitive finding of illegality, for the court added: "What you have got then is a statement, That's weed, man, which is evidence of knowledge that it is marijuana, which is precisely the same evidence that you have when you plead guilty to a charge of knowingly possessing marijuana. The guilty plea proves precisely the same thing that he knew it was marijuana, otherwise he shouldn't have pled guilty."[1]

The trial then proceeded. The following is a brief summary of the evidence: acting on a tip two officers positioned themselves about 300 feet from a parking lot where a dice game was going on. Defendant was one of the players. The dice game broke up. Defendant then walked to a box from which he removed a sack. He pulled something out of the sack and gave it to two men who had been in the game with him. They gave money to the

---

[1]The portion of the 1962 record, later admitted in evidence, showed that on December 14, 1962, defendant withdrew his plea of "not guilty" and pleaded guilty to a violation of section 11530. Later, on January 18, 1963, he was placed on probation for three years. He was, at all times, represented by counsel.

defendant. He returned the sack to the box. The same process was later repeated with a woman. The surveillance, in which the officers were assisted by a 25 power telescope, took about half an hour, during which time no one except defendant and his three customers came near the sack which defendant had removed from the box and no one but defendant came near the box. The officers then drove to the parking lot and walked over to the box. Through a rip in the sack which lay on top of the box they were able to observe a green leafy substance which resembled marijuana. Defendant was then placed under arrest. No marijuana was found on his person. The sack contained six packets wrapped in newspaper, each containing marijuana, plus 11 hand rolled cigarettes. A brown paper bag within the sack also contained marijuana. There was expert testimony that the packets were wrapped in a manner characteristic of marijuana held for sale.

The defense was that defendant never approached the box and that the lighting conditions were too poor to allow the police officers to observe who did go to the box. Defendant personally took the stand. The 1962 conviction was mentioned during the cross-examination. During the redirect examination defendant's counsel developed testimony that the marijuana possessed in 1962 was not rolled into cigarettes, but loose and wrapped. Defendant claimed that he never unwrapped it and that he was getting it for someone else. During the recross-examination the prosecutor nailed down these contentions and then asked whether defendant had not told the 1962 arresting officer that his purpose was to "roll the loose marijuana into cigarettes and sell it to somebody else for a profit." There was an immediate objection. The prosecutor indicated that his question was precipitated by the redirect examination. Foreseeing law not then in the books, the court ruled that constitutionally weak evidence was inadmissable even for impeachment. The jury was admonished "to disregard the last question with the same force and effect as if it had not been asked" and the defense rested. There was no motion for a mistrial.

Other matters relevant to defendant's contentions on appeal will be mentioned at appropriate points.

Defendant claims that the prosecution did not prove the prior as part of its own case.[2]

Defendant's denial of the prior and the prosecutor's fear that identity of name alone would not prove that it was this defendant who had suffered the

---

[2]Decisions such as *People* v. *Carrow*, 207 Cal. 366, 368-369 [278 P. 857]; *People* v. *Hamm*, 145 Cal.App.2d 242, 244 [302 P.2d 345]; and *People* v. *Batwin*, 120 Cal.App.2d 825, 828 [262 P.2d 88] make it necessary for the prosecution to prove a prior conviction with which a defendant is charged by evidence other than the defendant's admission of such conviction during his own cross-examination.

1962 conviction led the prosecution to try to prove identity of the person by no less than four witnesses, in addition to the certified copies of the 1962 information, the minutes showing the plea of guilty and the grant of probation. No evidence that defendant was not the Samuel Luckett convicted in 1962 was offered.

The presumption formerly contained in subdivision 25 of section 1963 of the Code of Civil Procedure was not continued in the Evidence Code. The Legislative Committee Comment gives the following reason: "Subdivision 25. Despite subdivision 25, the California courts have refused to apply the presumption of identity of person from identity of name when the name is common. E.g, *People* v. *Wong Sang Lung* (1906) 3 Cal.App. 221, 224 [84 P. 843, 845]. The matter should be left to inference, for the strength of the inference will depend in particular cases on whether the name is common or unusual."

■ We think that the name Samuel Luckett is sufficiently uncommon that, quite apart from the testimony of the witnesses, the finding of identity of person is supported by an inference based on identity of name.[3]

■ Defendant claims that section 969b of the Penal Code, which in effect states that priors for which terms have been served in institutions may be proved by the certified records of those institutions, provides the exclusive means of such proof. Defendant is mistaken. (*People* v. *Hill*, 67 Cal.2d 105, 121-122 [60 Cal.Rptr. 234, 429 P.2d 586].) In any event section 969b appears to be primarily concerned with proof of priors used as a basis for a finding of habitual criminality under section 644 of the Penal Code. ■ As far as the enhanced punishment under section 11530.5 of the Health and Safety Code is concerned, it is quite immaterial whether or not the previous conviction resulted in a prison term.

■ Defendant claims that the prior was constitutionally invalid because it was based on a plea of guilty which was the result of an illegal confession which provoked an illegal search.

The unarticulated premise of this argument must be that even if a prior is not subject to collateral attack on a particular ground (*Johnson* v. *New Jersey*, 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772]; *In re Sterling*, 63 Cal.2d 486 [47 Cal.Rptr. 205, 407 P.2d 5]; *In re Lopez*, 62 Cal.2d 368 [42 Cal.Rptr. 188, 398 P.2d 380]; *Linkletter* v. *Walker*, 381 U.S. 618 [14 L.Ed.2d 601, 85 S.Ct. 1731]) the People may nevertheless not use it affirmatively to their advantage. This is an interesting problem which, however, is not before us. In *People* v. *Coffey*, 67 Cal.2d 204, 215-219 [60 Cal.Rptr. 457, 430 P.2d 15] the court, following its own lead in *People* v.

---

[3]The seven telephone directories for the Los Angeles area presently in use in our office list a total of 23 subscribers named Luckett. There is not a single Samuel Luckett.

*Merriam,* 66 Cal.2d 390, 397 [58 Cal.Rptr. 1, 456 P.2d 161], recognized that the defense had certain burdens in connection with raising the constitutional invalidity of prior convictions. *Coffey* was decided several months before the trial in the case at bar. At no time during the trial did the defense claim that the conviction as such was infirm because of a violation of defendant's *Miranda* rights. *Miranda* was relied on only to block admission of the statements defendant had made at the time of the 1962 arrest. If it had become a legitimate issue at the trial of this case whether the 1962 conviction, as distinguished from the statements, was tainted, obviously a far more searching inquiry into the circumstances surrounding the guilty plea would have had to be made.

Defendant seeks to predicate a reversal on the prosecutor's question asked during the recross-examination. As noted an objection was sustained and the jury was instructed to disregard the question. Under such circumstances a reversal is not warranted. (*People* v. *Session,* 185 Cal. App.2d 684 [8 Cal.Rptr. 492].) Further, to the extent that the prosecutor's good faith is relevant, it must be pointed out that he was on then apparently safe ground. *Walder* v. *United States,* 347 U.S. 62 [98 L.Ed. 503, 74 S.Ct. 354] had held that illegally obtained evidence, though not admissible as part of the prosecution's case in chief, may nevertheless be used to impeach the accused. It was not until after the trial of this case that the continued vitality of *Walder* was doubted in *Groshart* v. *United States,* 392 F.2d 172. In *People* v. *Gardner,* 266 Cal.App.2d 19, 24 [71 Cal.Rptr. 568], this court followed the lead of *Groshart.* The trial judge's ruling sustaining the objection was therefore correct, but the prosecutor had no reason to anticipate it.

Finally, even if we could assume, that the jury drew an impermissible inference from the mere asking of the question, no prejudicial harm appears. The real question at the trial was whether it was defendant or some other person who had been observed making the two sales, not whether the marijuana was possessed for commercial reasons—that was all too evident. It seems highly unlikely that if the jury had a reasonable doubt on the identity of the possessor, it resolved that doubt by the use of the implication in the prosecutor's question. It must be recalled that the 1962 conviction for possession was legitimately before the jury for impeachment purposes and because of the denial of the prior. If we could base a reversal on speculation that the jury failed to obey the trial court's instructions on the use of evidence, it seems far more likely that its verdict was influenced by the conviction, than by the question.

Before the trial started, outside the courtroom, defense counsel, defendant and certain defense witnesses were sitting on a bench when the prosecutor, in the company of two police officers, approached them and said: "Keep your perjured witnesses out of the courtroom." Complaint was

made to the court. The prosecutor explained that he and defense counsel had been joking back and forth all day, waiting for the trial to start. He did not know that the persons with defense counsel were witnesses. The court offered to have the witnesses brought in. Defense counsel stated he wanted to be sure that they were not afraid to testify. The court suggested: "Why don't you do this, why don't you talk to them or in the morning and see whether or not anything that has occurred has had any effect on them, and if you think it has, why, call it to my attention in the morning and I will instruct them." Defense counsel said: "All right" and there the matter rested.

■ The allegedly intimidated witnesses were never identified in the record. The defense did call one witness, other than defendant himself and two police officers. If counsel had thought that any of the persons to whom he had been talking in the corridor were intimidated, he had been invited to bring it to the attention of the court. He never did and there is nothing we can do about it at this time.

■ Another asserted instance of misconduct is this: during the *voir dire* of prospective jurors defense counsel complained that a police officer sitting at the side of the counsel table near the jury box had opened a file in such a way that the defendant's "rap sheet" was visible to the prospective jurors. He requested that the prosecution should be cautioned "against this type of thing." The prosecutor replied that the jurors were 20 feet from his table and "they must have telescopic sight to be able to read details of what I have in my file. . . ." The court then told him and the officers not to handle his papers in such a way that the jury would see anything not admissible in evidence, adding, however, that the court had not observed anything of such a nature. Defense counsel thanked the court and that was all there was to it. Obviously defendant's point on appeal hardly merits discussion. His trial counsel's charges are in no way established in the record and, in any case, he seemed to be satisfied with the court's admonition.

The judgment is affirmed.

Stephens, J., and Aiso, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 17, 1969.