[Crim. No. 10689. Third Dist. June 24, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
CALVIN KENNETH KIMBREL, Defendant and Appellant.

870

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Julia Cline Newcomb, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BLEASE, J.**—Defendant appeals from a conviction of assault with a deadly weapon, the use of a "whip cord."[1] (Pen. Code, § 245, subd. (a).) Noting that the trial court instructed the jury that a "deadly weapon" was "any object, instrument, or weapon which is used in such a manner as to be capable of producing, and likely to produce, death or *great bodily injury*" (italics added) he contends that the court erred in not defining "great bodily injury" *sua sponte*. We affirm the judgment.

---

[1]Defendant was simultaneously convicted of an unconnected burglary (Pen. Code, § 459) and robbery (Pen. Code, § 211) for which he was separately tried. He does not challenge these convictions.

## FACTS

Paul Frasier said he encountered defendant on the afternoon of August 8, 1978, when he rode his motorcycle into the parking lot at Vista Point on Folsom Dam. He waved at him, though they were not acquainted, so he stopped to talk. About 20 minutes later, Frasier noticed two people he thought he knew passing by on a motorcycle and he waved. Defendant asked him if he was acquainted with the two and when Frasier replied that he was, defendant lashed him once about the head with a six-foot-long whip. The lash landed across his face, biting into his cheek, eye and nose, tearing the skin and leaving him with a black eye. When Frasier asked why he had hit him, defendant replied that the people on the motorcycle were members of a rival motorcycle club, the Sundowners, and that the members of his own club, the Misfits, did not like them or anyone associated with them.

Frasier also said that defendant took his motorcycle from him at knifepoint and drove away and that the motorcycle was never recovered. Defendant was, however, acquitted of the charges of robbery and an assault in connection therewith that depended on this testimony.

Defendant and a friend, the wife of one of his "brothers," offered a different version of the altercation. They testified that when defendant revealed his aversion to Sundowners and their friends, Frasier seemed to take offense and jumped up from his motorcycle and approached defendant in a threatening manner. Defendant pushed him away, but when Frasier started back toward him, he hit him in the face with his fringed leather jacket. A brief scuffle ensued, but was quickly broken up. Defendant apologized and they resumed talking and joking and, to make amends, defendant offered to purchase beer from a store nearby. Frasier gave defendant permission to use his motorcycle for the trip, but when defendant and his friend returned an hour or so later, he was gone. Defendant denied having either a whip or a knife, though he admitted some club members carried whip cords.

## DISCUSSION

The trial court instructed the jury, in the language of CALJIC No. 9.03 (4th ed. 1979), that "a deadly weapon is any object, instrument, or weapon which is used in such a manner as to be capable of producing, and likely to produce, death or great bodily injury." The CALJIC definition of great bodily injury was not given. Relying on

*People* v. *Caudillo* (1978) 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274], defendant contends that the term "great bodily injury" has acquired a restrictive technical legal meaning of which the jury was not apprised, resulting in prejudice to him and mandating reversal of his conviction. He suggests that either the omitted CALJIC definition or a definition modeled on former Penal Code section 12022.7 should have been given.

A trial court has no *sua sponte* duty to give amplifying or clarifying instructions in the absence of a request where the terms used in the instructions given are "commonly understood by those familiar with the English language"; it does have such a duty where the terms have a "technical meaning peculiar to the law." (*People* v. *Anderson* (1966) 64 Cal.2d 633, 639-640 [51 Cal.Rptr. 238, 414 P.2d 366] ["'force'" and "'fear,'" as used in definition of offense of robbery, did not have "technical meaning[s]"]; *People* v. *Salazar* (1977) 74 Cal.App.3d 875, 884 [141 Cal.Rptr. 753] ["intoxication" a common term]; *People* v. *Failla* (1966) 64 Cal.2d 560, 564-565 [51 Cal.Rptr. 103, 414 P.2d 39] [failure to define "felony" in definition of burglary requiring intent to commit a felony was reversible error]; *People* v. *Smith* (1978) 78 Cal.App.3d 698, 708-711 [144 Cal.Rptr. 330] [failure to instruct as to elements of "assault by means of force likely to produce great bodily injury" where jury was instructed that specific intent to commit said offense could support finding defendant guilty of burglary]; *People* v. *Burns* (1948) 88 Cal.App.2d 867, 873-874 [200 P.2d 134] ["traumatic injury" has technical legal meaning]; *People* v. *Earnest* (1975) 53 Cal.App.3d 734, 744-745 [126 Cal.Rptr. 107] ["'conspiracy'" has technical legal meaning, but error was harmless]; see also Witkin, Cal. Criminal Procedure (1963) § 481, p. 487.) We conclude, however, that "great bodily injury" is a "commonly understood" phrase and we read *Caudillo* as supporting this conclusion.

The meaning of "great bodily injury" applies to the crime of assault with a deadly weapon in that it explains what is meant by a deadly weapon.

Juries have been instructed for almost a century that a deadly weapon is an object "capable of producing, and likely to produce, death or great bodily injury." (See *People* v. *Rodrigo* (1886) 69 Cal. 601, 603 [11 P. 481]; *People* v. *Leyba* (1887) 74 Cal. 407, 408 [16 P. 200]; *People* v. *Lopez* (1901) 135 Cal. 23, 25 [66 P. 965]; *People* v. *Pearson* (1957) 150 Cal.App.2d 811, 820 [311 P.2d 142].) This acceptance

strongly suggests that the phrase provides juries with a meaningful and workable standard for their decision-making. In fact, defendant does not argue that the term is too indefinite to be fairly applied by a jury (see *In re Newbern* (1960) 53 Cal.2d 786, 797 [3 Cal.Rptr. 364, 350 P.2d 116]); he argues that the phrase by its "plain meaning" applies to a broader "range of injury" than is encompassed by the meaning ascribed to it in *Caudillo.*

In *Caudillo*, the Supreme Court held that the term "great bodily injury," in former Penal Code section 461 (as amended by Stats. 1967, ch. 150, § 1, p. 1216 [relating to enhanced punishment for *infliction* of great bodily injury]) meant a "'significant or substantial *physical* injury.'" (*People v. Caudillo, supra,* 21 Cal.3d at p. 581.) Although defendant reads the holding as narrowing the definition of "great bodily injury," the opinion's repeated adherence to a construction of the term "'according to the usual, ordinary import of [its] language'" (*id.,* at pp. 576, 577), its "ordinary usage" (*id.,* at p. 578), and "'"commonsense meaning"'" (*id.,* at p. 582) is fatal to his interpretation.

However, he argues, *Caudillo* gave implicit sanction to the CALJIC No. 9.03 definition, which was adopted from *People v. Wells* (1971) 14 Cal.App.3d 348 [92 Cal.Rptr. 191], and *People v. Richardson* (1972) 23 Cal.App.3d 403 [100 Cal.Rptr. 251]. (See also *People v. Miller* (1977) 18 Cal.3d 873, 883 [135 Cal.Rptr. 654, 558 P.2d 652].) It defines great bodily injury as a "significant or substantial bodily injury or damage; it does not refer to trivial or insignificant injury or moderate harm."[2]

We do not find the CALJIC No. 9.03 definition helpful or necessary to the understanding of "great bodily injury." The substitution of "significant" or "substantial" for "great," in the context of bodily injury, makes no gains on meaning. The substitution of one general term for another results from a misappraisal of its semantic utility. At its best, the practice is an innocuous bit of loquacity. At its worst, it is a

---

[2]*Caudillo,* of course, concerned a different offense, that of intentional infliction of great bodily injury. However, prior to the passage of the present Penal Code section 12022.7, the instruction thereon, CALJIC No. 17.20 (1973 rev. [3d ed. 1976 pocket pt., p. 275]) defined "great bodily injury" in the same way as CALJIC No. 9.03. (See *People v. Caudillo* (1978) 21 Cal.3d 562, 581, fn. 12 [146 Cal.Rptr. 859, 580 P.2d 274].) CALJIC No. 17.20 (1977 rev. [4th ed. 1979, p. 272]) now defines great bodily injury in the language of Penal Code section 12022.7 as "a significant or substantial physical injury."

misleading refinement which introduces flab for leanness of meaning as with the use of the spongy word "substantial." "Substantial" is one of "the flexible words, the words which can be squeezed into any shape, or stuffed into any hole that needs plugging—with a soft plug." (Mellinkoff, The Language of the Law (1963) p. 448.[3])

Also misleading is the attempted negative definition of great bodily injury as "not refer[ring] to trivial or insignificant injury or moderate harm." It is, of course, trivially true that a great bodily injury is not a trivial or insignificant or moderate injury. The converse, however, is false. Not every nontrivial or insignificant or nonmoderate injury is "great."[4] The impulse to define words of ordinary English is unfortunately pervasive. It should be curbed.

We can only conclude that the chief attraction for the defendant of the CALJIC No. 9.03 definition is that it was not given.

Defendant offers another instruction based upon *Caudillo. Caudillo* pointed out that the Legislature had defined "'great bodily injury'" in Penal Code section 12022.7 by the use of examples representing generalized instances of great bodily injury (or standard examples).[5] The Legislature amended the provision before its effective date and replaced it with "a definition of 'great bodily injury' that requires that the injury constitute a 'significant or substantial *physical* injury.'" (21 Cal.3d at p. 581.) The court said: "It is apparent, therefore, that the 1977 amendment to Penal Code section 12022.7 was not intended to lessen the magnitude of bodily injury required by the 1976 detailed definition of great bodily injury. Rather, it appears that the 1977 amendment to Penal Code section 12022.7 was designed to preclude the possibility that

---

[3]It has utility, of course, on those occasions when flexibility is preferred. (See Mellinkoff, The Language of the Law (1963) p. 450.) That is, to say the least, not a desirable feature of criminal statutes.

[4]The universe of "nots" is spacious indeed. It is, of course, also true that a great bodily injury is not a warm or blue or brackish injury.

[5]Penal Code section 12022.7 stated, in pertinent part: "As used in this section 'great bodily injury' means a serious impairment of physical condition, which includes any of the following: [¶] (a) Prolonged loss of consciousness. [¶] (b) Severe concussion. [¶] (c) Protracted loss of any bodily member or organ. [¶] (d) Protracted impairment of function of any bodily member or organ or bone. [¶] (e) A wound or wounds requiring extensive suturing. [¶] (f) Serious disfigurement. [¶] (g) Severe physical pain inflicted by torture." (Added by Stats. 1976, ch. 1139, § 306, p. 5162, operative July 1, 1976; amended by Stats. 1977, ch. 165, § 94, p. 679, urgency, eff. June 29, 1977, operative July 1, 1977.)

the 1976 detailed definition of great bodily injury be construed as all inclusive, leaving no latitude to the trier of fact to find a bodily injury of equal magnitude to the categories specified in the detailed definition but not coming literally within any category set forth therein." (21 Cal.3d at pp. 581-582.)

The defendant suggests an instruction inclusive of *but not limited to* the standard examples of former Penal Code section 12022.7. "'As used in this instruction, the term "great bodily injury" means a serious impairment of physical condition including but not limited to the following: prolonged loss of consciousness, severe concussion, protracted loss of any bodily member or organ, protracted impairment of function of any bodily member or organ or bone, a wound or wounds requiring extensive suturing, serious disfigurement, or severe physical pain inflicted by torture. For an injury to constitute "great bodily injury" it must either be one of the types of damage just described, or it must be of at least the same degree of seriousness as those named.'"

We agree that the use of standard examples (exemplars) is a useful device by which to flesh out and analogically control the meaning of a general term.[6] *Caudillo* makes them a part of the criteria of great bodily injury. We commend the proposed instruction for general use. However, it is not necessary to avoid a legally intolerable lack of clarity nor must it be given *sua sponte*. (See *People* v. *Miller, supra*, 18 Cal.3d at p. 883.)

Moreover, there is already present a potent comparison by which great bodily injury gains semantic weight. That is its juxtaposition to the term death. It is its capability for *death or* great bodily injury which makes a deadly weapon deadly. Great bodily injury, although less than death, is a conceptual neighbor, a point which the jury is likely to perceive. That is the sense of "deadly" in deadly weapon.

---

[6](See generally, Kuhn, The Essential Tension, ch. 12, Second Thoughts on Paradigms, at pp. 306-307.) An exemplar is a (paradigmatic) device completely at home in the common law. Like case law, an exemplar fleshes out the meaning of a rule by generalizing the instances of its application. It is an authoritative example in which "the general gains bite from the particular application." (Llewellyn, The Common Law Tradition, Deciding Appeals (1960) p. 7.) It also has uses in legislation which gives rise to the doctrines of *noscitur a sociis* and *ejusdem generis*. (See 2A Sutherland, Statutory Construction (4th ed. 1973) Intrinsic Aids, §§ 47.16-47.18 et seq., pp. 101-112.) The application of a rule, of course, necessarily sheds light on its meaning.

We are persuaded by the long acceptance of "great bodily injury" as a term commonly understandable to jurors that it has not acquired a technical legal definition requiring in the absence of special circumstances a clarifying instruction. In the present case, where the jury found that defendant lashed his victim across the face with a whip cord, causing injury to his eye, we have no difficulty in concluding that the trial court did not err in failing to give such an instruction.

The judgment is affirmed.

Regan, Acting P. J., and Reynoso, J., concurred.