[Crim. No. 17188. Fourth Dist., Div. Three. Oct. 21, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
GORDON DOUGLAS BRUCKER, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Sandra L. Goldsmith, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jay M. Bloom and Frederick R. Millar, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

TROTTER, P. J.—Defendant Gordon Douglas Brucker was convicted of assault with a deadly weapon by force likely to produce great bodily injury (count I, Pen. Code, § 245, subd. (a)),[1] and battery with serious bodily injury (count II, §§ 242, 243, subd. (d)). A special allegation of great bodily injury during the commission of the assault offense (§ 12022.7) was found to be not true. The jury was unable to reach a verdict on the charge of felony hit and run driving with injury (count III, Veh. Code, § 20001). Following a jury trial waiver, the court found defendant had been convicted of a prior felony within the meaning of section 667.5 (voluntary manslaughter under § 192, subd. 1) for which he had served a separate term of imprisonment.

Defendant was sentenced to state prison for the upper term of four years on count II (battery) with the sentence for count I (assault) stayed pending service of the former. The court stayed the enhancement sentence pursuant to section 667.5, subdivision (a), on the prior conviction as well. This appeal followed.

Defendant argues his conviction should be reversed because the trial court committed prejudicial error in failing to instruct the jury *sua sponte*: (1) on CALJIC No. 2.72 (corpus delicti must be proved independent of admission or confession), and (2) on the meaning of "willful" as applied to the crime of battery with serious bodily injury (count II) and on the meaning of "culpable negligence" as applied to defendant's accident theory of defense. Defendant also asserts the trial court's finding he suffered a prior conviction was erroneous and requires the case be remanded for resentencing.

FACTS

On August 23, 1981, Richard Knisley and two friends, Jerry Pace and Troy Hartman, were driving from Knisley's house to a barbecue, when

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

Knisley noticed his six year old daughter standing next to a Volkswagen car. Knisley was upset to see his daughter so far down the street from his house talking to a stranger. Knisley asked his friend to stop the car, got out, and told his daughter to go home. He then started an altercation with the driver of the Volkswagen, defendant Gordon Brucker, whom Knisley had never seen before. At one point defendant grabbed a 7-Up bottle and tried to break it on the emergency brake handle. As Knisley was getting ready to strike defendant, he was stopped by his friends who advised defendant to leave.

Defendant then started his car and drove away from the area heading west. Knisley remained in the street talking to his friends. Defendant drove about 120 yards, made a U-turn in the middle of the street and headed east toward Knisley who was now crossing the street. Defendant's car struck Knisley as he stood in an area between two parked cars separated by a driveway.

Witnesses testified defendant shifted at least three times as he approached Knisley and accelerated to a speed of 30-40 miles per hour. He swerved to the right, dipping inside the pocket of cars where Knisley was standing, hit Knisley without slowing down and continued down the street. Knisley's friends gave chase and followed defendant's car for about 200 yards before it came to a stop. He was already out of the Volkswagen by the time they reached his car. As they walked over to defendant, he "started saying that the man was trying to attack his car."

Defendant testified he accelerated rapidly down the street because his car was a "modified" car and it accelerated "exceptionally fast." He wanted to leave the area and did not want anything to happen to his car which had been recently painted and fixed in preparation for a car show. He further testified he did not see Knisley because he was looking at the people on the left side. He testified he swerved to the right of the road because after making the U-turn he was over past the center of the street so he "came back over" as far to the right as he could to get "away from where all of this had happened." Defendant also denied trying to leave the scene after hitting Knisley. He testified that after seeing his windshield shattered he simply let the car "roll to a stop" down the street, as he could feel something was wrong with the front end. Defendant, however, admitted making a statement to the effect Knisley had tried to attack his car.

On rebuttal, eyewitnesses to the incident testified defendant was looking straight ahead, and not to the left, prior to impact with Knisley.

## Discussion

### I

■ Defendant argues the court erred in failing to *sua sponte* instruct the jury. The corpus delicti or elements of a crime must be proved independently of any admissions or confessions made by defendant. In making this argument defendant asserts his statement "the man was trying to attack my car" was the equivalent of an admission which triggered the court's *sua sponte* obligation to give CALJIC No. 2.72.[2]

Defendant is correct in asserting failure to give this instruction constituted error. (*People* v. *Beagle* (1972) 6 Cal.3d 441, 455 [99 Cal.Rptr. 313, 492 P.2d 1]; *People* v. *Wilson* (1975) 50 Cal.App.3d 811, 815 [123 Cal.Rptr. 663].) "The omission, however, does not constitute reversible error if upon a reweighing of the evidence it does not appear reasonably probable that a result more favorable to defendant would have been reached in the absence of the error." (*People* v. *Beagle, supra,* 6 Cal.3d at p. 455; see also *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

There was ample evidence to establish the elements of the charged offenses other than defendant's admission: an altercation between defendant and Knisley shortly before the incident; eyewitness testimony defendant down-shifted, accelerated rapidly and swerved to the right before striking Knisley; defendant looking straight ahead at the time his car hit Knisley and his car continuing for another 200 yards after impact. This evidence was sufficient to convict defendant of the charged offenses independent of his statements. We cannot conclude it is reasonably probable a different verdict would have been reached had the court instructed the jury on CALJIC No. 2.72. Accordingly, we find the failure to give the instruction does not constitute reversible error.

### II

■ ■ Defendant next argues the trial court committed reversible error by failing to instruct the jury (1) on the meaning of "willful" as applied to the crime of battery with serious bodily injury, and (2) on the meaning of "culpable negligence" as applied to his theory the incident was an accident.

■ "'"It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant

---

[2]CALJIC No. 2.72 provides in its relevant part: "No person may be convicted of a criminal offense unless there is some proof of each element of the crime independent of any [confession or] admission made by him outside of this trial."

to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." ' " (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 323 [185 Cal.Rptr. 436, 650 P.2d 311], quoting from *People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390].) ■ It has also been held that the court's *sua sponte* duty to instruct on general principles of law "closely and openly" connected with the facts of the case encompasses an obligation to instruct on particular defenses and their relationship to the elements of the charged offense. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913].) This obligation, however, arises "only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." (*Id.* at p. 716.) ■ Moreover, "[a] trial court has no *sua sponte* duty to give amplifying or clarifying instructions in the absence of a request where the terms used in the instructions given are 'commonly understood by those familiar with the English language'; it does have such a duty where the terms have a 'technical meaning peculiar to the law.' [Citations.]" (*People* v. *Kimbrel* (1981) 120 Cal.App.3d 869, 872 [174 Cal.Rptr. 816], quoting from *People* v. *Anderson* (1966) 64 Cal.2d 633, 639-640 [51 Cal.Rptr. 238, 414 P.2d 366]; see also *People* v. *McElheny* (1982) 137 Cal.App.3d 396, 403-404 [187 Cal.Rptr. 39].) We examine each of defendant's contentions in light of these well defined principles.

### 1. *Failure to Instruct on the Meaning of "Willful"*

■ The term "willful" was used by the court in instructing the jury on the elements of the crime of battery with serious bodily injury;[3] but gave no definition of this term. Moreover defendant argues the court's instruction on the requirement of general criminal intent in the commission of a battery did not cure the omission because such instruction does not use the term "willful."[4] Thus the failure to define "willful" resulted in ambiguity regarding the precise standard of conduct proscribed. We disagree.

---

[3]The court used CALJIC No. 9.09 which provides proof of the following elements constitute the crime of battery with serious bodily injury:

"1. That a person used force or violence upon the person of another, 2. That such use was *willful* and unlawful, and 3. That the use of force or violence inflicted serious bodily injury on such other person." (Italics added.)

[4]The instruction used was CALJIC No. 3.30, adapted as follows: "In the crimes charged in Counts I, II and III of the information, namely, Assault with Deadly Weapon and Force Likely to Produce Great Bodily Injury, Battery with Serious Bodily Injury, and Hit and Run with Injury, there must exist a union or joint operation of act or conduct and general criminal intent. To constitute general criminal intent it is not necessary that there should exist an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful."

The court correctly instructed the jury on the general legal principles relevant to the proof of the crime of battery.[5] Defendant argues the instructions given were nevertheless incomplete since the term "willful" needed amplification or explanation; however, he did not request such amplification and thus failed to preserve his claim of error on appeal. (*People* v. *Salazar* (1977) 74 Cal.App.3d 875, 882 [141 Cal.Rptr. 753]; *People* v. *James* (1969) 274 Cal.App.2d 608, 611 [79 Cal.Rptr. 182].) The trial court has no *sua sponte* obligation to give an instruction clarifying or amplifying instructional terms unless such terms have a legal technical meaning. (*People* v. *Kimbrel, supra,* 120 Cal.App.3d at p. 872.)

The term "willful" as used in the context of the crime of battery "implies simply a purpose or willingness to commit the act." (§ 7, subd. 1; *In re Smith* (1972) 7 Cal.3d 362, 364 [102 Cal.Rptr. 335, 497 P.2d 807].) Such legal definition is no different than that "commonly understood by those familiar with the English language"[6] (*People* v. *Anderson, supra,* 64 Cal.2d at pp. 639-640), and must therefore be presumed within the understanding of jurors. Accordingly, we conclude the court was not required to explain or amplify the word "willful" on its own motion. Failure to do so does not constitute reversible error.

## 2. *Failure to Instruct on the Meaning of "Culpable Negligence"*

The term "culpable negligence" was used in instructions given regarding "accident or misfortune," in accordance with defendant's reliance on this defense.[7] Defendant argues "culpable negligence" has a technical legal meaning in the context of his defense and failure to define it precluded the jury from evaluating the evidence relevant to his defense and understanding the relationship between his defense and the charged offenses.

We agree the term "culpable negligence" has a technical meaning peculiar to the law which is not commonly understood by the average person[8] and thus conclude the trial court erred in failing to define this term on its own motion.

---

[5]CALJIC No. 9.09's definition of the crime of battery comports with the statutory definition; Penal Code section 242 defines battery as "any willful and unlawful use of force or violence upon the person of another."

[6]Webster's Dictionary defines wilful as follows: "said or done deliberately or intentionally." (Webster's New World Dict. (2d college ed. 1982) p. 1627.)

[7]CALJIC 4.45 reads as follows: "When a person commits an act or makes an omission through misfortune or by accident under circumstances that show no evil purpose, intention or *culpable negligence,* he does not thereby commit a crime." (Italics added.)

[8]In order to constitute a criminal act defendant's conduct must go beyond that constituting ordinary negligence: the conduct must be aggravated or reckless. (*People* v. *Peabody* (1975) 46 Cal.App.3d 43, 47 [119 Cal.Rptr. 780].)

However, that failure was not prejudicial. Even though not specifically defined, such omission did not totally preclude the jury from evaluating the evidence relevant to the defense of accident. The jury was also instructed circumstances showing lack of intent or evil purpose constitute accident or misfortune. (CALJIC No. 4.45.) The factual question posed by the omitted definition—whether or not defendant had driven his car recklessly—was necessarily resolved adversely to defendant when the jury found defendant guilty of battery. (I.e., defendant intended to drive his car in the way he did.) Thus the failure to define "culpable negligence" could not have been prejudicial to defendant since the jury necessarily found defendant's actions were intentional and not accidental. We therefore find defendant's argument without merit.

### III

■ Defendant next urges us to reverse the court's finding he suffered a prior felony conviction of voluntary manslaughter, asserting the prior conviction was insufficiently proven through the admission of improperly authenticated exhibits into evidence.

This issue was separately tried before the court without a jury. During these proceedings, the court admitted into evidence two prosecution exhibits over defendant's objections. Exhibit No. 1 consisted of several documents[9] stapled to a cover letter from the Department of Corrections, certifying the authenticity of the attached documents. Exhibit No. 2 consisted of a certified copy of a transcript of sentencing proceedings for defendant "Gordon Bruckner," accompanied by a seal from the Los Angeles County Superior Court clerk certifying the transcript to be a copy of the original on file in the clerk's office.

Exhibit No. 1 was admitted pursuant to section 969b,[10] as records certified by their official custodian, the Director of the Department of Corrections. Exhibit No. 2 was admitted under Evidence Code section 1506,[11] as a copy of a public writing in the custody of a public entity the Los Angeles

---

[9] Among these documents were a certified copy of the abstract of judgment on defendant's 1975 voluntary manslaughter conviction, defendant's "Summary of Sentence Data" as well as his fingerprints and photograph.

[10] Section 969b provides in its relevant part: "For the purpose of establishing prima facie evidence of [a prior conviction] . . . records or copies of records of any state penitentiary . . . in which such person has been imprisoned . . . [which] have been certified by the official custodian of such records, may be introduced as such evidence."

[11] Evidence Code section 1506 provides as follows: "A copy of a writing is not made inadmissible by the best evidence rule if the writing is a record or other writing that is in the custody of a public entity."

Superior Court. The court found the documents introduced into evidence to be trustworthy, noting there was nothing indicating they were not authentic.

Defendant argues neither exhibit was sufficiently authenticated because each of the documents attached were not individually certified. He also claims exhibit No. 2 was irrelevant since it referred to sentencing proceedings for a "Gordon Bruck*ner*" and no evidence was presented to prove defendant "Bruck*ner*" was in fact the same person as defendant Brucker. We disagree.

██ "When the accused challenges a prior conviction, the state bears the burden of proving it beyond a reasonable doubt. [Citations.]" (*People* v. *Lizarraga* (1974) 43 Cal.App.3d 815, 820 [118 Cal.Rptr. 208].) The state may meet this burden, however, by introducing into evidence several types of evidence: certified copies of prison records (§ 969b; *People* v. *Lizarraga, supra,* 43 Cal.App.3d at p. 820); certified copies of court minute orders or of the abstract of judgment (*People* v. *Hill* (1967) 67 Cal.2d 105, 121-122 [60 Cal.Rptr. 234, 429 P.2d 586]); or certified copies of writings in the custody of a public entity. (Evid. Code, §§ 1530, 1531; *People* v. *Bradley* (1970) 3 Cal.App.3d 273, 276 [83 Cal.Rptr. 234].)

██ Defendant's lack of certification argument is without merit. Exhibit No. 1 represented the attached documents to be true copies of prison records in the custody of its official legal custodian. Section 969b does not require that each separate prison document be individually certified. We decline to read such an unnecessary requirement into its provisions. Exhibit No. 2 was also properly admitted into evidence. It not only represented a copy of a public record (transcript) in the custody of a public entity (Evid. Code, § 1506), but had further been certified by its public custodian, the clerk of the Los Angeles County Superior Court. (Evid. Code, §§ 1530 and 1531.)[12] Furthermore, each exhibit constituted a prima facie establishment of defendant's prior conviction of voluntary manslaughter. Defendant did not present any evidence to overcome or meet this prima facie case. (See, e.g., *People* v. *Bradley, supra,* 3 Cal.App.3d at pp. 277-278.)

---

[12]Evidence Code section 1530 provides in relevant part: "(a) A purported copy of a writing in the custody of a public entity . . . is prima facie evidence of the existence and content of such writing . . . if:

"(1) The copy purports to be published by the authority of the . . . public entity . . . in which the writing is kept;

". . . . . . . . . . . . . . . . . . . . . . . . .

"(b) The presumptions established by this section are presumptions affecting the burden of producing evidence."

Evidence Code section 1531 states as follows: "For the purpose of evidence, whenever a copy of a writing is attested or certified, the attestation or certificate must state in substance that the copy is a correct copy of the original, or of a specified part thereof, as the case may be."

■ Defendant's contention that the name "Bruck*ner*" appearing on exhibit No. 2 (transcript of sentencing proceedings) did not sufficiently identify him is also without merit. He did not object to exhibit No. 2's admission on lack of identification grounds, nor did he present evidence to show "Bruck*ner*" was in fact someone other than himself. Exhibit No. 2 shows that despite the variance in spelling of defendant's name, it refers to sentencing proceedings for the same conviction (voluntary manslaughter), it has the same information number as the abstract of judgment attached to exhibit No. 1, and took place on the same day the judgment of conviction was filed. (Nov. 26, 1975.) Moreover, defendant's name is sufficiently uncommon to support the presumption that, absent contrary evidence, the named defendant "Bruck*ner*" was the same person as defendant Brucker. (See, e.g., *People* v. *Luckett* (1969) 1 Cal.App.3d 248, 253 [81 Cal.Rptr. 539]; *People* v. *Sarnblad* (1972) 26 Cal.App.3d 801, 805 [103 Cal.Rptr. 211].) Accordingly, we reject defendant's belated contention.

IV

Lastly, defendant argues we should remand this case for resentencing. Defendant's argument is based on two grounds: (1) The trial court used the "invalid" finding of defendant's prior conviction in determining its sentencing choice, and (2) the trial court mistakenly assumed that the three-year enhancement provided by section 667.5, subdivision (a) was applicable to this case.

Since we hold that defendant's prior conviction was sufficiently proved, we need not address the "invalidity" claim. Defendant's second argument, while facially compelling, is also without merit. Section 667.5, subdivision (a), provides for a three-year enhancement whenever both the new offense and a prior separate prison term served by defendant constitute "violent felonies," as further specified in section 667.5, subdivision (c).[13] Defendant's prior conviction for voluntary manslaughter is one of the "violent felonies" listed in subdivision (c);[14] however, neither one of the offenses

---

[13]Section 667.5, subdivision (a) provides in relevant part: "Where one of the new offenses is one of the violent felonies specified in subdivision (c) . . . the court shall impose a three-year term for each prior separate prison term served by the defendant where the prior was one of the violent felonies specified in subdivision (c) . . . ."

[14]Section 667.5, subdivision (c) provides as follows: "(c) For the purpose of this section, 'violent felony' shall mean any of the following:
"(1) Murder or voluntary manslaughter.
"(2) Mayhem.
"(3) Rape as defined in subdivision (2) of Section 261.
"(4) Sodomy by force, violence, duress, menace, or threat of great bodily harm.
"(5) Oral copulation by force, violence, duress, menace, or threat of great bodily harm.
"(6) Lewd acts on a child under 14 as defined in Section 288.
"(7) Any felony punishable by death or imprisonment in the state prison for life.

involved in the present convictions (count I, assault with a deadly weapon by force likely to produce great bodily injury; count II, battery with serious bodily injury) is included in subdivision (c)'s list.

The trial court originally sentenced defendant to the middle term of three years for count II (battery) with the sentence for count I (assault) stayed pending appeal and service of the sentence for count II. Additionally, the court imposed a one-year enhancement in accordance with section 667.5, subdivision (b).[15] At the urging of the prosecutor, the court struck its original sentence and resentenced defendant to the upper term of four years using the prior to aggravate the sentence on count II, and staying the three-year enhancement on the prior. Sentence for count I was once more stayed pending service of the four-year sentence on count II.

Defendant claims a remand for resentencing is required under either the *Watson* standard (*People* v. *Watson, supra,* 46 Cal.2d 818, 836, reasonable probability of a different result occurring in absence of the alleged error), or under the standard enunciated by *People* v. *Roberson* (1978) 81 Cal.App.3d 890, 893 [146 Cal.Rptr. 777] (a remand is required where it cannot be determined whether an improper factor was determinative in the court's sentencing choice). Neither contention has merit.

■ Application of the three-year enhancement under section 667.5, subdivision (a) was erroneous since *only* the prior conviction is considered a "violent felony" under subdivision (c). Such error, however, is harmless in this case. The record indicates the court had originally sentenced defendant to the middle term of three years for count II plus a one-year enhancement for the prior conviction finding, totalling a four-year sentence. This was the same number of years defendant eventually received upon the court's mistaken assumption regarding applicability of section 667.5, subdivision (a). It is thus not "reasonably probable" that absent the error a different total sentence would have been imposed upon defendant. (See, e.g., *People* v. *Moreno* (1982) 128 Cal.App.3d 103, 110 [179 Cal.Rptr. 879]; *People* v. *Dozier* (1979) 90 Cal.App.3d 174, 179 [153 Cal.Rptr. 53].)

Defendant's reliance upon *Roberson, supra,* is misplaced. *Roberson* stands for the proposition a particular finding of gun use or a prior felony conviction may *not* be used both as an aggravating circumstance and as an

---

"(8) Any other felony in which the defendant inflicts great bodily injury . . . as provided for in Section 12022.7 . . . or any felony in which the defendant uses a firearm . . . as provided in Section 12022.5."

[15]Section 667.5, subdivision (b) provides in pertinent part: "[W]here the new offense is any felony for which a prison sentence is imposed, . . . the court shall impose a one-year term for each prior separate prison term served for any felony; . . ."

enhancement. If the court mistakenly uses such a finding for *both* purposes and the improper factor was determinative in the court's sentencing choice, *Roberson* requires a remand for resentencing in which the trial court must decide whether it will use the particular finding for either aggravation or enhancement purposes. (*People* v. *Roberson, supra,* 81 Cal.App.3d at p. 893.)

Here the court used the finding of the prior felony conviction *solely* as an aggravating factor in sentencing defendant to the upper term of four years for count II. It did not further use the prior as an enhancement factor, since the enhancement term was effectively stayed. Such procedure is specifically approved by rule 441 (b).[16] (See, e.g., *People* v. *Whitehouse* (1980) 112 Cal.App.3d 479, 483 [169 Cal.Rptr. 199].) Accordingly, we decline to remand this case for resentencing.

Finally, defendant asks us to strike the additional enhancement sentence prescribed for the prior conviction, in accordance with rule 441 (b), since the prior conviction was used as an aggravating factor by the court in sentencing defendant to the upper four year term for count II. Defendant also asks us to amend the abstract of judgment to reflect that subdivision (b) rather than subdivision (a) of section 667.5 is applicable to this case.

Defendant's request is granted. Accordingly, we order the three-year enhancement sentence stricken pursuant to rule 441 (b). The abstract of judgment shall be corrected to show the application of section 667.5, subdivision (b) to defendant's sentence.

As above modified, the court's judgment is hereby affirmed.

Crosby, J., and Wallin, J., concurred.

A petition for a rehearing was denied November 10, 1983, and appellant's petition for a hearing by the Supreme Court was denied January 5, 1984.

---

[16]Rule 441 (b) provides as follows: "A fact charged and found as an enhancement may be used to impose the upper term, whereupon the additional term of imprisonment prescribed for that fact as an enhancement shall be stricken. The use of the fact to impose the upper term is an adequate reason for striking the additional term of imprisonment."