[No. B126498. Second Dist., Div. Two. Oct. 4, 1999.]

RUSSELL MASAJI KODANI, Plaintiff and Appellant, v.
ED SNYDER, as Acting Director, etc., Defendant and Respondent.

COUNSEL

Ronald A. Jackson for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Martin H. Milas, Assistant Attorney General, Silvia M. Diaz and Matthew D. Botting, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**BOREN, P. J.**—Russell Masaji Kodani appeals from a judgment denying his petition for writ of mandate, which sought to overturn the suspension of

his driver's license by the Department of Motor Vehicles (DMV). Appellant's license was suspended because he was driving with an excessive blood-alcohol content. Contrary to appellant's contention, there was reasonable cause to stop his vehicle based on the arresting officer's observation that appellant was not wearing his seat belt.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 22, 1998, at approximately 2:00 a.m., California Highway Patrol (CHP) Officer T. A. Snyder observed appellant driving while not wearing his seat belt and thus in violation of the law mandating seat belt use.[1] As indicated in the officer's written report submitted to the DMV, the officer was driving his CHP patrol vehicle north on Topanga Canyon Boulevard and preparing to make a right turn onto Victory Boulevard when he observed appellant's 1989 blue Honda CRX stopped at the traffic light and headed west on Victory Boulevard. Officer Snyder noticed appellant was "not wearing his seat belt." The officer drove behind appellant's vehicle. As appellant entered the intersection, the officer activated his patrol car's lights, and appellant pulled over to the side of the road.

Appellant had bloodshot eyes, an odor of alcoholic beverage, an unsteady gait and slurred speech. He failed several field sobriety coordination tests. Appellant also twice blew into a preliminary alcohol screening device, and registered 0.14 percent and 0.12 percent blood-alcohol content on the two preliminary tests.[2] The officer arrested appellant for driving under the influence of alcohol (Veh. Code, §§ 23152, 23153), and took him to the Van Nuys jail where he submitted to breath tests to determine his actual blood-alcohol content. Two tests each revealed a blood-alcohol content of 0.12 percent, well in excess of the legal limit of 0.08 percent. Officer Snyder then processed an administrative suspension of appellant's driver's license and issued him a temporary driver's license. (See Veh. Code, § 13353.2.)

Appellant requested and received a hearing before the DMV and contested the basis for the suspension of his driver's license. He was represented by counsel, who submitted a letter brief asserting various evidentiary objections and legal arguments. A telephonic hearing was held. The DMV received into

---

[1]Vehicle Code section 27315, subdivision (d)(1), provides that but for several limited statutory exceptions, inapplicable here, "No person shall operate a motor vehicle on a highway unless that person and all passengers 16 years of age or over are properly restrained by a safety belt."

[2]The preliminary alcohol screening test is not determinative of blood-alcohol content, but is a field sobriety test which may be used as a further investigative tool in order to establish reasonable cause to believe a person was driving a vehicle while under the influence of alcohol. (Veh. Code, § 23157, subd. (h).)

evidence, over appellant's objections, Officer Snyder's sworn statement, the officer's arrest report and the breath test results revealing appellant's blood-alcohol content. Appellant presented no testimony or any other evidence.

The DMV hearing officer's findings and decision upheld the suspension of appellant's driver's license. The hearing officer found that there was sufficient evidence Officer Snyder had reasonable cause to believe appellant was driving a motor vehicle in violation of Vehicle Code section 23152 or 23153, appellant was placed under lawful arrest, and appellant was driving the vehicle while he had a blood-alcohol content in excess of the legal limit of 0.08 percent.

Thereafter, appellant filed a petition for a writ of mandate challenging the administrative order. (See Veh. Code, § 13559; Code Civ. Proc., § 1094.5.) The superior court found that the arresting officer's uncontradicted statement that he observed appellant not wearing a seat belt constituted reasonable cause to detain appellant, that the weight of the evidence supported the DMV's findings, and that the DMV's decision to suspend appellant's driver's license was proper. The court denied the petition for writ of mandate and issued judgment in favor of respondent DMV.

## DISCUSSION

■ Appellant contends that the superior court erred in finding lawful his initial detention for a seat belt violation in concluding his ensuing arrest for driving while under the influence of alcohol was proper. Specifically, appellant reasons that the basis for the traffic stop was his violation of the law requiring that the operator of a motor vehicle be "restrained by a safety belt" (Veh. Code, § 27315, subd. (d)); that the Legislature has used, as purportedly synonymous, the terms "seat belt," "safety belt," and "lap belt," and distinguished them from the term "shoulder harness"; that the law requires a driver to use a shoulder harness, as distinguished from a lap-style safety belt, only if the vehicle is equipped with such a shoulder harness as standard equipment; that the arresting officer should have included information that the vehicle was equipped with a shoulder harness observed by him not to be in use; and that the arresting officer's statement appellant was not wearing a "seat belt" meant only he was not wearing a lap-style safety belt, which the officer could not have observed from his vantage point in the patrol car. Appellant thus concludes there was no basis for the initial stop because the arresting officer could not have seen a lap belt, and there was no evidence the officer observed a shoulder harness installed on the vehicle but not being used by appellant.

Appellant's reasoning is flawed in several regards. Appellant's major premise is that when the officer stopped him because he was not wearing a

"seat belt," the officer must have meant appellant was not wearing a lap-style belt. To the contrary, common sense, as well as our interpretation of relevant statutes, leads to the conclusion that the terms "seat belt" and "safety belt" have similar broad meanings, which include the configuration of both a "lap belt" and "shoulder harness" combination, or just a "lap belt." Absent any evidence to the contrary, the most reasonable interpretation of the arresting officer's reference to a "seat belt" is to the current and most prevalent configuration—a "lap belt" and "shoulder harness" combination, with the latter component often easily observed from an adjacent oncoming vehicle.[3]

The Legislature has not specifically defined any of the seat belt terminology at issue. However, "Words and phrases are construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law . . . are to be construed according to such peculiar and appropriate meaning or definition." (Civ. Code, § 13.) The seat belt terminology here does not involve technical words with meanings peculiar to the law. (Cf. *People* v. *Kimbrel* (1981) 120 Cal.App.3d 869, 872 [174 Cal.Rptr. 816], citing examples of " 'commonly understood' " words with no " 'technical meaning peculiar to the law.' ") We thus look to the context and approved usage of the language.

In the legislative context, the Motor Vehicle Safety Act (Veh. Code, § 27315), which mandates the use of seat belts, uses the terms "seatbelt"[4] and "safety belt" interchangeably and without distinction.[5] Such fungible

---

[3]Depending upon the year of the vehicle and body style, two types of seat belt assemblies may be installed in the front outboard seating position of a private passenger motor vehicle offered for original sale in California (Veh. Code, § 27315, subd. (*l*), adopting the occupant crash protection federal safety standards in 49 C.F.R. § 571.208 (1998)): either (1) "a lap belt for pelvic restraint," or (2) "a combination pelvic and upper torso restraints," which includes a shoulder belt "for use only in conjunction with a lap belt." (49 C.F.R. § 571.209, S3 (1998).)

[4]The term "seat belt" is listed in the dictionary as two words (Webster's Collegiate Dict. (10th ed. 1995) p. 1054; Oxford English Dict. (2d ed. CD-ROM 1994); Webster's Third New Internat. Dict. (1981) p. 2049). Vehicle Code section 27315 uses "seatbelt" (one word), but another relevant statute (§ 27314.5) refers to "seat belt" (two words). Also, the Code of Federal Regulations refers variously to both usages. Given the inconsistency in the statutes and regulations, we will follow the dictionary preference in all instances in this opinion except when quoting directly from a statute or regulation.

[5]Vehicle Code section 27315, subdivision (a), provides as follows: "The Legislature finds that a mandatory *seatbelt* law will contribute to reducing highway deaths and injuries by encouraging greater usage of existing manual *seatbelts*, that automatic crash protection systems which require no action by vehicle occupants offer the best hope of reducing deaths and injuries, and that encouraging the use of manual *safety belts* is only a partial remedy for

treatment of the two terms in the statute acknowledges the parallel meaning of the terms in common parlance.[6]

Other related legislation is also instructive. Car dealers are required to post warnings on used passenger vehicles (model years 1972 to 1990) admonishing buyers that despite the benefits of the "use of all seat belts," there are potential dangers in using "lap-only belts," and "shoulder harnesses" may be available which can be retrofitted in the vehicle. (Veh. Code, § 27314.5, subds. (a)(1), (b)(1).) The statute thus uses the term "lap belt" as a type of "seat belt," and refers to more than one type of seat belt (i.e., "*all* seat belts"). Accordingly, the statute implies that a "shoulder harness" used with a "lap belt" is another type of "seat belt," and such a configuration is therefore within the broader and more inclusive category of "seat belt" or "safety belt."

 In the present case, when the officer saw appellant "not wearing his seat belt," he had reasonable cause to stop him; i.e., a reasonable suspicion that appellant had been or was about to be involved in some criminal activity.[7] (See *United States* v. *Place* (1983) 462 U.S. 696, 702 [103 S.Ct. 2637, 2641-2642, 77 L.Ed.2d 110].) ██ "It is settled that circumstances short of probable cause to make an arrest may justify a police officer stopping and briefly detaining a person for questioning or other limited investigation. [Citations.] . . . The guiding principle . . . is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' [Citation.]" (*In re Tony C.* (1978) 21 Cal.3d 888, 892 [148 Cal.Rptr. 366, 582 P.2d 957], fn. omitted.) Even if the circumstances are as consistent with lawful activity as with criminal activity, the officer may still rightfully "inquire into such circumstances 'in the proper discharge of the officer's duties.' " (*Id.* at p. 894.) "The possibility of an

addressing this major cause of death and injury. The Legislature declares that the enactment of this section is intended to be compatible with support for federal safety standards requiring automatic crash protection systems and should not be used in any manner to rescind federal requirements for installation of automatic restraints in new cars." (Italics added.)

[6]Both general terms simply refer to an arrangement of straps or belts which can secure an occupant to the seat of a vehicle as a safety precaution in the event of an accident. (See Webster's Collegiate Dict., *supra*, at pp. 1030, 1054.)

[7]The failure to wear a seat belt while operating a motor vehicle is an infraction (Veh. Code, § 27315, subd. (h)), and thus a criminal offense (Pen. Code, §§ 17, 19.8).

We note that in 1995 the Legislature amended the Motor Vehicle Safety Act to delete a provision which had prohibited a peace officer from, inter alia, stopping or arresting a person for not wearing a seat belt when the officer had no other cause to stop or seize the person other than for that violation. (Stats. 1995, ch. 365, § 1, operative Jan. 1, 1996.) "When the Legislature deletes an express provision of a statute, it is presumed that it intended to effect a substantial change in the law." (*Royal Co. Auctioneers, Inc.* v. *Coast Printing Equipment Co.* (1987) 193 Cal.App.3d 868, 873 [238 Cal.Rptr. 538].) There thus was no statutory prohibition against the officer detaining appellant for the seat belt violation.

innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct." (*Ibid.*)

■ Contrary to appellant's assertion, the arresting officer was not required to have an intimate knowledge of the make, model and year of appellant's vehicle and the safety restraint system in that particular vehicle before concluding that a shoulder harness was installed in the vehicle but not in use by appellant. It may well be that some cars are of such antique vintage that an officer would not reasonably expect to find a shoulder harness in them. In such an uncommon situation, the absence from sight of a shoulder harness would not reasonably imply a violation of the mandatory seat belt law and could not support a lawful stop of the vehicle. But such was not the case with appellant's 1989 Honda CRX. Even in cases where the nature of the vehicle renders it reasonably uncertain whether a shoulder harness would be installed, the officer is entitled, pursuant to *In re Tony C.*, *supra*, 21 Cal.3d 888, to stop the vehicle and resolve the uncertainty to determine if the mandatory seat belt law has been violated.

Accordingly, "resolv[ing] all evidentiary conflicts and draw[ing] all legitimate and reasonable inferences in favor of the trial court's decision" (*Yordamlis* v. *Zolin* (1992) 11 Cal.App.4th 655, 659 [14 Cal.Rptr.2d 225]), substantial evidence supports the trial court's judgment and its conclusion that there was reasonable cause to detain and then to arrest appellant and that the weight of the evidence supports the DMV's suspension order. (*Bell* v. *Department of Motor Vehicles* (1992) 11 Cal.App.4th 304, 309 [13 Cal.Rptr.2d 830]; *Thompson* v. *Department of Motor Vehicles* (1980) 107 Cal.App.3d 354, 358 [165 Cal.Rptr. 626].)

DISPOSITION

The judgment is affirmed.

Nott, J., and Mallano, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.