Opinion
BIGELOW, J.
Defendant appeals from a judgment of conviction, in a jury trial, of battery occurring in 1975, in violation of Penal Code section 242 and the court’s resulting order granting probation with certain conditions. Defendant had declined to enter a plea of not guilty by reason of insanity in addition to his plea of not guilty.
*Supp. 23 Defendant’s main contention is that the trial court denied him due process of law by refusing to allow defendant to prove a defense of unconsciousness due to mental disease in his trial to determine guilt or innocence. We agree and reverse the judgment.
Facts
The essential facts are not disputed. Defendant was in a public restaurant as a guest and without any apparent reasonable provocation struck the victim, the maitre d’, twice. Defendant went out into the parking lot where he engaged in additional acts of violence. Defendant was eventually subdued and arrested.
Defendant testified to a complete lapse of memory regarding any of these events; that he had had similar lapses of memory as well as “dream-like” experiences since his return from Vietnam in 1968, blaming as the cause thereof the many months of heavy combat along with large casualties having been suffered by his unit. Defendant had been in therapy for this condition, first with a psychologist and then with Dr. Neff, a psychiatrist at the Veterans Administration.
Dr. Neff was appointed by the court and conducted a two-hour examination of defendant concerning the incidents giving rise to the charge. Based on this examination and his prior contacts with defendant in therapy treatments, it was Dr. Neff’s expert opinion that defendant had no memory of the incident in question and that his loss of memory occurred because he was unconscious at the time of this incident. In the doctor’s opinion, defendant’s unconscious condition was the result of a fugue (or dissociative) state brought on by the continuing traumatic neurosis from which defendant suffered due, in large part, to his combat experience. He further opined that this phenomenon was a symptomatic flareup of the combat-induced neurosis: that the person was literally reliving a particular combat experience he had in Vietnam and that defendant was at that moment back in Vietnam in 1966-1967, rather than in Los Angeles in 1975. Dr. Neff described a fugue state as an altered state of consciousness that resembled amnesia, wherein an individual could be participating in his usual and customary activities without being aware of the fact of what he was doing. A person would be unaware of his behavior during this state. The fugue state would last anywhere from minutes to a week or two.
*Supp. 24 Dr. Neff also testified that at the time of the event in question defendant was also unable to distinguish right from wrong or the nature and quality of his act in the context of the present day.
The trial court, on People’s motion, struck Dr. Neff’s testimony from the record and instructed the jury to disregard it. The court also struck from the record and instructed the jury to disregard the defendant’s testimony regarding his war experiences and psychiatric treatment. A defense motion for mistrial was denied.
The trial court’s expressed reasons for striking this testimony were that defendant suffered from a continuing mental disorder, traumatic neurosis, was therefore not of sound mind and could not raise the defense of unconsciousness in the trial to determine guilt or innocence. Its conclusion was based on the theory that the defense of unconsciousness was not favored in the law because it was a complete defense to criminal charges.
Applicable Penal Code Sections
The pertinent portions of Penal Code section 26 are as follows: “All persons are capable of committing crimes except those belonging to the following classes: . . . Three—Lunatics and insane persons. . . . Five —Persons who committed the act charged without being conscious thereof. . . .”
One statutory limitation which must be considered, in passing, is Penal Code section 22 which reads “No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. . . .” Thus, unconsciousness caused by voluntary intoxication is not a defense to a general intent crime such as battery, the crime in the case at bench. (People v. Conley (1966) 64 Cal.2d 310 [49 Cal.Rptr. 815, 411 P.2d 911].)
Sound Versus Unsound Mind Dichotomy
The People urge us to apply a further limitation on the defense of unconsciousness, namely, that persons of “unsound mind” or mental condition may not avail themselves of this defense, but must raise the issue only in the sanity hearing phase of a trial based on a plea of not guilty by reason of insanity. A definite decisional conflict exists in *Supp. 25 California as to the sound versus unsound mental condition dichotomy as a ground for the defense of unconsciousness. Starting with People v. Methever (1901) 132 Cal. 326 [64 P. 481] and continuing up to and with People v. Ray (1975) 14 Cal.3d 20 [120 Cal.Rptr. 377, 533 P.2d 1017] a whole series of cases either hold or rely on decisions which hold that an unsound mental condition cannot be the basis of a defense of unconsciousness. On the other side of this dichotomy are such cases as People v. Mosher (1969) 1 Cal.3d 379 [82 Cal.Rptr. 379, 461 P.2d 659]; People v. Coogler (1969) 71 Cal.2d 153 [77 Cal.Rptr. 790, 454 P.2d 686], People v. Wilson (1967) 66 Cal.2d 749 [59 Cal.Rptr. 156, 427 P.2d 820] and People v. Williams (1971) 22 Cal.App.3d 34 [99 Cal.Rptr. 103] which hold or rely on decisions which hold that an unsound mental condition can be the basis of a defense of unconsciousness. To resolve this conflict, we base our holding, by analogy, on the unanimous decision of the Supreme Court in People v. Wetmore (1978) 22 Cal.3d 318 [149 Cal.Rptr. 265, 583 P.2d 1308],
People v. Wetmore Decision
In Wetmore, supra, defendant was charged with burglary (Pen. Code, § 459), a specific intent crime requiring proof that at the time of the entry defendant had the intent to commit larceny or any felony. Defendant had sought to introduce evidence of his diminished capacity to form such a specific intent due to his mental disease (insanity). The trial court had held such evidence to be not admissible in the guilt phase of the trial relying on the dictum laid down in People v. Wells (1949) 33 Cal.2d 330 [202 P.2d 53]. This dictum was to the effect that since sanity is conclusively presumed at the guilt trial, evidence tending to show lack of mental capacity to commit the crime because of legal insanity is barred at that stage. In reversing the trial court and rejecting the Wells, supra, dictum, the Supreme Court held in Wetmore, supra, at pages 323-324: “Mental incapacity does not occur ‘because of legal insanity’; instead both insanity and diminished capacity are legal conclusions derived from evidence of defendant’s mental condition. [Citation omitted.] Consequently, if the evidence of a defendant’s mental illness indicates that the defendant lacked the specific intent to commit the charged crime such evidence cannot reasonably be ignored at the guilt trial merely because it might (but might not) also persuade the trier of fact that the defendant is insane.” And again at page 327: “We therefore hold that evidence of diminished capacity is admissible at the guilt phase whether or not that evidence may also be probative of insanity. The trial court erred when, *Supp. 26 relying on the Wells dictum, it refused to consider evidence of diminished capacity in determining defendant’s guilt.” (Fn. omitted.) That decision also disposed of the argument that since there might not be a lesser included offense to the specific intent crime, the defendant would then be acquitted and not be subject to confinement and treatment provided for in Penal Code sections 1026 and 1026a after a verdict or finding of not guilty by reason of insanity. It also considered the effect of the arguable defects of civil commitment of possibly dangerous persons under the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5150) and was not persuaded. It concluded by declaring that the overlap in evidence admissible to prove diminished capacity and evidence admissible to prove insanity now approaches a totality of duplication. (Wetmore, supra, p. 331.)
Diminished Capacity and Unconsciousness
“The difference between the two states—of diminished capacity and unconsciousness—is one of degree only: where the former provides a ‘partial defense’ by negating a specific mental state essential to a particular crime, the latter is a ‘complete defense’ because it negates capacity to commit any crime at all. [Citations omitted.] Moreover, evidence of both states is not antithetical; jury instructions on the effect of both will be required where the evidence supports a finding of either.” (Citations omitted.) (People v. Newton (1970) 8 Cal.App.3d 359, 377 [87 Cal.Rptr. 394].)
Conclusion
“The state bears the burden of proving every element of the offense charged; defendant cannot logically or constitutionally be denied the right to present probative evidence rebutting an element of the crime merely because such evidence also suggests insanity.” (Wetmore, supra, 22 Cal.3d at p. 321.)
Penal Code section 20 provides in pertinent part as follows: “In every crime or public offense there must exist a union or joint operation of act and intent . . . .” Battery, in violation of Penal Code section 242, is a general intent crime (see definition in People v. Hood (1969) 1 Cal.3d 444, *Supp. 27 456-457 [82 Cal.Rptr. 618, 462 P.2d 370]), the defense of unconsciousness due to mental illness would constitute a complete defense to such a criminal charge in the trial to determine guilt or innocence. The evidence thereof should not have been stricken.
The judgment is reversed.
Pacht, Acting P. J., and Ibáñez, J., concurred.