[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 104 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 105 
OPINION
No reported California case has ever said that a battery can be committed with "criminal negligence." We shall not be the first to so hold. With commendable candor, the Attorney General has conceded error at oral argument. We reverse because the trial court instructed the jury that appellant could be convicted of battery if he acted with "criminal negligence." It is unnecessary to reach appellant's remaining contentions.
Pete Lara, Jr., was convicted by jury of battery with serious bodily injury. (Pen. Code, §§ 242 and 243, subd. (d).)[1] In a bifurcated proceeding, the jury found that appellant had suffered two "strikes" within the meaning of section 667, subdivisions (d) and (e). The trial court sentenced appellant to state prison for an indeterminate term of 25 years to life pursuant to the "three strikes" law. (§ 667, subd. (e)(2)(A).)
 Facts
Appellant spent the weekend at the home of his girlfriend, Michelle M. On Sunday afternoon Michelle returned home from work to find appellant watching a video and drinking beer. While Michelle straightened up the house, appellant stood on the front porch watching two teenage girls walking in front of the house. Michelle became angry and an argument ensued.
Michelle told appellant to leave. They argued while appellant gathered his belongings. Appellant removed $60 from Michelle's purse. When he was a few steps from the front door, Michelle stood behind him, asked him to stay, and asked for the return of her money. Appellant swung around to face her and the side of his right hand struck Michelle, breaking the bone in her nose. Appellant looked shocked and said: "Your nose," or "I broke your nose."
Michelle picked up the telephone to dial 911. When appellant attempted to take it from her, she hit him on the hand with the receiver. Appellant left the house and dropped Michelle's money outside. Michelle retrieved her money and called 911, requesting that appellant be arrested. She then drove herself to the hospital. *Page 106 
At the hospital, Michelle gave a tape-recorded statement to a Ventura police officer. During the interview, Michelle stated that she did not touch appellant before he hit her. When asked whether appellant had been "physical" with her before, Michelle answered: "Actually, . . . he has never hit me. OK, the guy he pushed me. . . . It's always when I tell him to leave, you know I tell him to leave, and he'll, you know, be getting ready to leave but I start running off at the mouth. . . . I don't shut up so he flips out on me, you know."
In a subsequent interview with an investigator with the district attorney's office, Michelle stated this was the first time appellant struck her and that she had mixed feelings about the prosecution. Toward the end of the interview, Michelle claimed, for the first time, that appellant might have hit her by accident.
At trial, Michelle testified that, before appellant hit her, she grabbed the back of his Pendleton shirt with such force that most of the buttons popped off the front of the shirt. Appellant turned around to free himself from her grasp and hit her in the nose by accident.
 Instructions
Pursuant to the People's request, the trial court instructed the jury with CALJIC No. 3.30, the standard instruction on general criminal intent. This correctly informed the jury that: "In the crime[s] charged . . . there must exist a union or joint operation of act or conduct and general criminal intent. To constitute general criminal intent it is not necessary that there should exist an intent to violate the law. When a person intentionally does that which the law declares to be a crime, [he] [she] is acting with general criminal intent, even though [he] [she] may not know that [his] [her] act or conduct is unlawful." (CALJIC No. 3.30)
Pursuant to the defense request, the trial court instructed the jury with CALJIC No. 4.45: "When a person commits an act or makes an omission through misfortune or by accident under circumstances that show neither criminal intent nor purpose, nor [criminal] negligence, [he] [she] does not thereby commit a crime." Unfortunately, the trial court did not delete "nor criminal negligence" from CALJIC No. 4.45.
At the People's request the trial court also instructed the jury with a modified version of CALJIC No. 3.35: "You may find the defendant guilty of [the] crime charged or the lesser crimes if there exists a union or joint operation of act or conduct and criminal negligence." The "use note" *Page 107 
indicates: "This instruction is limited to those few offenses where criminal negligence and not intent is involved." (CALJIC No. 3.35 (5th ed. 1988 bound vol.) p. 131.)
The reporter's transcript affirmatively shows that the genesis of the erroneous instruction was with the prosecutor. The prosecutor believed he could obtain conviction on both a general criminal intent theory and on a "criminal negligence" theory: "This would allow the jury to convict Mr. Lara on either or — either a finding that he possessed criminal general intent to commit the crime charged or find that he had the required criminal negligence to do so. [¶] Now, I believe the evidence has been presented to the Court to justify both theories and instruction should be given. [¶] This would equate criminal negligence with criminal — general criminal intent. I believe it should be given because we're giving the instruction in 3.36 telling them what criminal negligence is. What value is that without being able to apply it to my case, our case. [¶] . . . [¶] Accident is a defense, however, if you act with criminal negligence you're held to the same standard as willful criminal intent. That's what this instruction is for and given quite frequently."
 General Intent v. Criminal Negligence (1) Our Supreme Court has recently reiterated the long-standing rule that battery is a general intent crime. (People v. Colantuono (1994) 7 Cal.4th 206, 217 [26 Cal.Rptr.2d 908, 865 P.2d 704]; see also People v. Hawkins (1993)15 Cal.App.4th 1373, 1376 [19 Cal.Rptr.2d 434]; People v.Dollar (1991) 228 Cal.App.3d 1335, 1342 [279 Cal.Rptr. 502];People v. Lisnow (1978) 88 Cal.App.3d Supp. 21, 24 [151 Cal.Rptr. 621].) This necessarily excludes criminal liability when the force or violence is accomplished with a "lesser" state of mind, i.e., "criminal negligence." As with all general intent crimes, "the required mental state entails only an intent to do the act that causes the harm. . . ." (People v. Davis (1995)10 Cal.4th 463, 519, fn. 15 [41 Cal.Rptr.2d 826, 896 P.2d 119].) Thus, the crime of battery requires that the defendant actually intend to commit a "willful and unlawful use of force or violence upon the person of another." (§ 242; People v. Colantuono,supra, 7 Cal.4th at p. 217.) In this context, the term "willful" means "simply a purpose or willingness to commit the act. . . ." (§ 7, subd. 1.)
(2) "Reckless conduct alone does not constitute a sufficient basis for . . . battery. . . ." (People v. Lathus (1973)35 Cal.App.3d 466, 469-470 [110 Cal.Rptr. 921].) However, if an act "`inherently dangerous to others' . . . [is] done `with conscious disregard of human life and safety,' the perpetrator must be aware of the nature of the conduct and choose to ignore *Page 108 
its potential for injury, i.e., act willfully. If these predicates are proven to the satisfaction of the trier of fact, the requisite intent is . . . established by the evidence. [Fn. omitted.]" (People v. Colantuono, supra, 7 Cal.4th at p. 220, italics omitted, quoting People v. Lathus, supra, 35 Cal.App. 3
d at pp. 469-470.)
Acting with "conscious disregard" within the meaning ofColanatuono, supra, is not the equivalent of "criminal negligence." The former requires proof that the defendant subjectively intended to engage in the conduct at issue. General criminal intent may be inferred by the conduct of the defendant if he or she acts with a "conscious disregard." On the other hand, "criminal negligence" requires jurors to apply an objective standard and to ask whether a reasonable person in the defendant's position would have appreciated the risk his or her conduct posed to human life. (People v. Watson (1981)30 Cal.3d 290, 296 [179 Cal.Rptr. 43, 637 P.2d 279]; People v.Rippberger (1991) 231 Cal.App.3d 1667, 1682 [283 Cal.Rptr. 111] .)
"Criminal negligence" requires proof of "aggravated, culpable, gross, or reckless conduct, which is such a departure from the conduct of an ordinarily prudent person under the same circumstances as to demonstrate an indifference to consequences or a disregard of human life." (In re Jerry R. (1994) 29 Cal.App.4th 1432, 1439 [35 Cal.Rptr.2d 155]; People v. Oliver (1989)210 Cal.App.3d 138, 146 [258 Cal.Rptr. 138].) Where liability may be imposed based on "criminal negligence," the defendant's subjective belief or good faith is irrelevant. (In re Jerry R., supra,
29 Cal.App.4th at p. 1439; People v. Rippberger, supra, 231 Cal.App.3d at p. 1682.) In such a case, the defendant may be found to have acted with "criminal negligence" without proof that he or she intended to commit the act.
(3a) Here, appellant was charged with battery with serious bodily injury, a general intent crime. Accordingly, the jury should only have been instructed with CALJIC No. 3.30. As indicated, the jury was also instructed that it could convict appellant if it found that he acted with the "lesser" mental state of "criminal negligence." This was error.
 Accident or Misfortune
The error appears to have occurred because the trial court attempted to reconcile the mental state necessary for the offense of battery with that necessary to support an accident or misfortune defense.
Section 26, subdivision Five provides a defense for persons who commit an act "through misfortune or by accident, when it appears that there was no *Page 109 
evil design, intention, or culpable negligence." (§ 26, subd. Five.) CALJIC No. 4.45, the standard instruction on accident, also provides that the defense applies where "circumstances . . . show neither criminal intent nor purpose, nor [criminal] negligence. . . ." The use note for that instruction states: "If this instruction is given, an instruction defining `criminal negligence' must be given sua sponte." (CALJIC No. 4.45 (5th ed. 1988 bound vol.) p. 174.) The "if," however, presupposes, inter alia, that the charged offense can be committed with "criminal negligence." (4) Only "[w]here negligence is required as a predicate for a criminal act, . . ." (People v. Peabody
(1975) 46 Cal.App.3d 43, 47 [119 Cal.Rptr. 780]) is it appropriate to instruct on "criminal negligence."[2]
 People v. Brucker
In People v. Brucker (1983) 148 Cal.App.3d 230
[195 Cal.Rptr. 808], the defendant was charged with felonious assault, battery with serious bodily injury, and "felony hit and run driving." Brucker testified that he was driving away from the scene of an argument when his car struck the person with whom he had been arguing. He claimed to have not even been looking at the victim. (Id. at pp. 235-236.) Thus, the theory of defense was accident. At Brucker's request, the trial court gave CALJIC No. 4.45.
On appeal, Brucker argued that the trial court erred because it failed to define the term "culpable negligence" which we equate with the term "criminal negligence." The Court of Appeal agreed: "[T]he term `culpable negligence' has a technical meaning peculiar to the law which is not commonly understood by the average person and [we] thus conclude the trial court erred in failing to define this term on its own motion." (148 Cal.App.3d at p. 239, fn. omitted; see also People v. Thurmond (1985)175 Cal.App.3d 865, 872 [221 Cal.Rptr. 292].)
The Brucker court determined, however, that the error was harmless because the jury had been properly instructed on the general intent element of each crime and had necessarily found that Brucker acted with the necessary intent: "The factual question posed by the omitted definition [of culpable negligence] — whether or not defendant had driven his car recklessly — *Page 110 
was necessarily resolved adversely to defendant when the jury found defendant guilty of battery. (I.e., defendant intended to drive his car in the way he did.) Thus the failure to define `culpable negligence' could not have been prejudicial to defendant since the jury necessarily found defendant's actions were intentional and not accidental." (People v. Brucker,supra, 148 Cal.App.3d at p. 240.)
Brucker, therefore, does not hold that "culpable negligence" or "criminal negligence" is sufficient for battery or any other general intent crime. It only holds that, if the jury is instructed on the defense of accident and the tendered instruction contains a reference to "culpable negligence," the jury should also be given the technical meaning of that term.
(5) Brucker assumes, without analysis, that the accident defense with the component of "criminal negligence" is available to a defendant charged with a general intent crime. The assumption is not correct. The accident defense amounts to a claim that the defendant acted without forming the mental state necessary to make his or her actions a crime. (See, e.g.,People v. Scott (1983) 146 Cal.App.3d 823, 832 fn. 5 [194 Cal.Rptr. 633]; People v. Calban (1976) 65 Cal.App.3d 578, 584 [135 Cal.Rptr. 441]; People v. Gorgol (1953) 122 Cal.App.2d 281, 308 [265 P.2d 69].) If the crime charged requires general criminal intent, then the defense should apply to acts committed "through misfortune or by accident, when it appears there was no . . . [general intent] . . .," (§ 26, subd. Five) regardless of whether the defendant was criminally negligent.
Where, as here, the defendant is charged with a general intent crime, instruction on "criminal negligence" is erroneous. We recommend to the CALJIC committee to expressly so advise the trial courts in its use note. (3b) The courts have long recognized that ". . . the reference to `criminal negligence' should be omitted [from jury instructions] where it is not an issue in the particular case." (People v. Landry (1951)106 Cal.App.2d 8, 14 [234 P.2d 736]; People v. Becker (1949)94 Cal.App.2d 434, 442-443 [210 P.2d 871]; People v. Womble
(1945) 67 Cal.App.2d 885, 889-890 [155 P.2d 838]; People v.Weaver (1928) 96 Cal.App. 1, 11-12 [274 P. 361]; cf., People
v. Mendez (1924) 67 Cal.App. 724, 726-727 [228 P. 349];People v. Price (1908) 9 Cal.App. 218, 221-222 [98 P. 547].)
 Reversal Required
Appellant's state of mind, i.e., whether he acted with general intent or not, was the key issue in the case. Pursuant toPeople v. Green (1980) 27 Cal.3d 1 [164 Cal.Rptr. 1,609 P.2d 468], a conviction must be reversed if one of *Page 111 
the People's theories of the case is "legally incorrect" and the reviewing court cannot determine which theory the jury rested its verdict upon. (Id. at p. 69; see also People v. Harris
(1994) 9 Cal.4th 407, 419 [37 Cal.Rptr.2d 200, 886 P.2d 1193].) The "Green rule," however, has been questioned by our Supreme Court. (Id., at p. 419, fn. 7.) Pursuant to the latest direction from our Supreme Court, reversal for misinstruction on the elements of an offense is governed by the harmless beyond a reasonable doubt standard. (People v. Swain (1996) 12 Cal.4th 593, 607 [49 Cal.Rptr.2d 390, 909 P.2d 994].) Under either standard, appellant is entitled to reversal and new trial. We have no way of determining whether the jury found that appellant acted with general criminal intent or with "criminal negligence." We cannot say that this misinstruction was harmless beyond a reasonable doubt. Appellant is entitled to a trial without reference to "criminal negligence."
The judgment is reversed.
Stone (S.J.), P.J., and Gilbert, J., concurred.
[1] All statutory references are to this code unless otherwise stated.
[2] The reference to "criminal negligence" in CALJIC No. 4.45 applies to crimes where the Legislature has said that "criminal negligence" is a substitute for criminal intent, e.g., involuntary manslaughter. (§ 192, subd. (b); see also 1 Witkin 
Epstein, Cal. Criminal Law (2d ed. 1988) Elements of Crime, § 113, pp. 133-134.) Thus, where the defendant is charged with a crime which may be committed with "criminal negligence" and defends on the theory of accident, CALJIC No. 4.45 should be modified to read: "When a person commits an act or makes an omission through misfortune or accident under circumstances that show . . . [no] criminal negligence, he does not thereby commit a crime." *Page 112