Filed 3/25/13  P. v. Valenzuela CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARIO VALENZUELA,<br><br>Defendant and Appellant. | F063436<br><br>(Super. Ct. No. MF009465A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Michael E. Dellostritto, Judge.

Barbara Michel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Kelly E. LeBel, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Appellant Mario Valenzuela was convicted after jury trial of battery on a prison guard. (Pen. Code, § 4501.5.)[1] Multiple prior strikes and prior prison term allegations were found true. After the trial court denied appellant's new trial motion, it sentenced him as a third strike offender to 25 years to life imprisonment plus two years.

Appellant challenges the sufficiency of the evidence supporting the battery conviction. He argues that the trial court erred by refusing to instruct on the defenses of accident, unconsciousness and involuntary intoxication. Appellant contends that the trial court further erred by denying his new trial motion. None of these claims is persuasive. The judgment will be affirmed.

# PROCEDURAL FACTS

On March 16, 2011, an information was filed charging appellant with battery on a correctional officer; it was specially alleged that appellant personally inflicted great bodily injury during the commission of this crime. (§§ 4501.5, 12022.7, subd. (a).) Nine prior felony convictions and seven prior prison terms were separately alleged. (§§ 667, subds. (a), (e)-(j), 1170.12, subds. (a)-(e), 667.5, subd. (b).)

Appellant pled not guilty and denied the special allegations. A bifurcated jury trial commenced on May 18, 2011.

During the morning of May 26, 2011, the trial court made the following announcement:

> "Mr. Valenzuela is not here. He is being detained in a holding cell in the hallway as a result of him bolting from the courtroom, into the hallway, and proceeding down the hallway a couple of departments, before he, essentially, went to his knees and surrendered. [¶] The jurors were outside in the hallway, obviously; so they saw this. And we are going to

---

[1]     All statutory references are to the Penal Code unless otherwise specified.

bring the jurors in, simply to advise them it will be a few minutes before we get started."

The trial court instructed the jurors to disregard the incident. It individually questioned the jurors about their ability to follow this instruction and to remain fair and impartial. Appellant moved for a mistrial based on his misconduct. The court denied the mistrial motion, finding there was not "any reason to believe that this jury would not be able to render a fair verdict in this particular case." Appellant asked the court to discharge Juror Nos. 2193178, 2233142 and 2216314. It discharged Juror No. 2193178, but declined to discharge the other two jurors.

On May 27, 2011, the jury found appellant guilty of battery on a correctional officer. It found the great bodily injury allegation not true. The trial court sustained six prior strike allegations (allegation Nos. 2, 3, 5, 8, 9, 10) and three prior prison term allegations (allegation Nos. 20, 21, 23). It found the rest of the special allegations not true.

On August 2, 2011, appellant filed a motion for new trial based on jury misconduct.

On August 15, 2011, appellant filed a motion to dismiss his prior strikes in the interest of justice pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

On September 27, 2011, the new trial motion and *Romero* motion were heard and denied. Immediately thereafter, appellant was sentenced to an indeterminate term of 25 years to life imprisonment plus two[2] years. This sentence was ordered to run consecutive to the sentence he was already serving in Riverside County Superior Court case No. 054754.

On September 28, 2011, appellant filed a timely notice of appeal.

---

[2]     Special allegations Nos. 20 and 21 arose from two prison terms that were served concurrently.

3.

## FACTUAL CIRCUMSTANCES OF THE OFFENSE

On the morning of November 24, 2010, appellant was an inmate at the California Correctional Facility in Tehachapi. He was the sole occupant of cell No. 204 in housing unit five. Correctional Officer Michael Cich was retrieving food trays from prisoners through the food port in each cell. Appellant refused to return his food tray. Cich[3] collected the food tray from the adjacent cell and then returned to appellant's cell. Appellant had covered the window on the cell door with paper. Cich asked appellant to return the food tray. Appellant replied, "I'm not giving you my tray. Come in and get it."

Correctional Sergeant Julio Hurtado was summoned to appellant's cell. Appellant would not speak to him. Hurtado opened the cell door a few inches and told appellant to step forward. Appellant did not respond to the directive. Hurtado closed the cell door. Hurtado told his supervisor, "[W]e needed to do a medical extraction, because there was no communication whatsoever with [appellant], and I couldn't determine his health or well-being at that moment."

A six-member extraction team assembled outside the cell. Hurtado unlocked the food port. He attempted to communicate with appellant but did not receive any response. Hurtado tossed a T-16 OC grenade through the food port into the cell. It made a loud bang and dispensed pepper spray. Appellant did not respond; there was no movement or sound inside the cell. Hurtado sprayed a MK-9 OC fogger, which dispensed pepper spray, through the food port into the cell.[4] Appellant did not cough or make any noise or

---

[3]  Solely to enhance readability correctional officers will be referenced to by their last names only. No disrespect is intended or implied by the omission of the officers' titles.

[4]  The T-16 OC grenade and the MK-9 OC fogger have similar effects. The user holds a MK-9 OC fogger and sprays it towards the intended recipient. The user tosses a T-16 OC grenade.

movement.  Hurtado closed the food port and announced on the radio that "we have a medical emergency in Housing Unit 5."

Correctional Officer Donald Smith was the "shieldman" and led five members of the extraction team into the cell; Hurtado remained outside the cell in the doorway.[5] Team members discovered that, in addition to covering the window on the cell door, appellant had covered the window on the cell's back wall and the ceiling light.  Appellant had draped a blanket across the width of the cell.  Blankets and sheets had been tied to the frame of the bunk bed, enclosing the lower bunk into a tent-like structure.  The cell was dark; the only light came from the open cell door.  Appellant was not visible.

Smith knocked down the blanket that was draped across the cell and "immediately braced for attack."  He slowly walked towards the back of the cell.  Smith tried to remove the sheets and blankets from the bed frame but could not get them untied.  Smith testified that he told the other officers that he "couldn't get the blankets down.  And right about that time the blankets dropped from the left of me.  And that's when the inmate attacked me from the [lower] bunk."  Appellant had wrapped both of his hands with torn white cloth that "looked like wrapping that a boxer would have."  He also had pieces of white cloth that may have been shirts tied "around his whole face, and he had just like his eyes showing."

Smith testified that appellant rushed from the lower bunk "and headed straight towards" him.  Smith moved forward.  They collided.  Appellant hit Smith's shield with his upper torso.  Smith testified that "[w]hen we first collided, the shield came back and hit my face, pushed up against my body.  And I had to use a lot of force to push him back."  Appellant continued to push against Smith.  Smith had to use a great deal of force

---

[5]    The extraction team members were equipped with helmets with face shields, latex gloves and gas masks.

to push appellant towards the back of the cell. Appellant continued to push against Smith "in the opposite direction. And also -- I don't recall if it was him flailing his arms, but I was being twisted around a lot. I was struggling to [keep] the shield on him." Smith testified that appellant was "pushing against me and using his body, twisting. Just fighting against me, basically, is what he was doing." Smith drove appellant back towards the bunk area. Smith's shield got caught on the top bunk and caused Smith to twist towards the left. Appellant "came out from the bottom of the shield."

Smith dropped the shield and faced appellant. Smith testified that appellant "threw … a right backhand towards me. And I don't recall if it struck my face or not." Smith "threw two punches" at appellant, grabbed his head and "pulled him down in between my legs" to control him. Appellant "was flailing his arms." Smith pushed appellant towards the window area. The other members of the extraction team "came and grabbed him and put him on the ground." Smith "got next to [appellant's] shoulder area. And he was kind of twisting around, still kind of struggling. And I just held his head down with my right hand." Cich laid on top of appellant so other officers could place handcuffs on him. Leg restraints were placed on appellant and he was removed from the cell.

A nurse conducted a medical evaluation of appellant. She did not observe any injuries to appellant's eyes. The skin around appellant's eyes was not orange, unlike his front abdominal area which was orange from pepper spray exposure. Appellant had abrasions to his right forehead, above his right eyebrow and on his right palm. There was redness on the back of his neck. Appellant did not report any eye injuries or vision impairment.

Smith suffered a spiral fracture on his left hand during the cell extraction. Surgery was performed; a metal plate and some screws were placed in the hand. Smith was unable to work for four months.

Appellant did not testify or present any evidence in his defense.

## DISCUSSION

**I.      The Battery Conviction Is Supported By Substantial Evidence.**

Appellant challenges the sufficiency of the evidence supporting the battery conviction.  He argues there is inadequate proof "that appellant was the actual cause of the injury to Officer Smith's hand" and "that appellant acted willfully in causing the injury."  We are not persuaded.  Appellant's evidentiary challenge is premised on the position that the People were required to prove that appellant willfully injured Smith's hand.  This premise is unsound.  The crime of battery on a correctional officer does not require proof of physical harm or intent to inflict injury.

The crime of battery is defined as "any willful and unlawful use of force or violence upon the person of another."  (§ 242.)  Section 4501.5 provides:  "Every person confined in a state prison of this state who commits a battery upon the person of any individual who is not himself a person confined therein shall be guilty of a felony …."  "Section 4501.5 criminalizes a battery committed by a prisoner on a nonprisoner.  The elements of a violation of this section are:  (1) The defendant was confined in a state prison; (2) while confined, the defendant willfully touched the victim in a harmful or offensive manner; and (3) the victim was not confined in a state prison."  (*People v. Flores* (2009) 176 Cal.App.4th 924, 930-931, fn. omitted.)

"[A]n offensive touching, although it inflicts no bodily harm, may nonetheless constitute a battery …."  (*People v. Myers* (1998) 61 Cal.App.4th 328, 335; see, e.g., *People v. Hamilton* (2009) 45 Cal.4th 863, 934 [battery conviction upheld where defendant spat on a deputy]; *People v. Pinholster* (1992) 1 Cal.4th 865, 961 [battery conviction upheld where the defendant prisoner threw a cup of urine in the victim's face].)  The term "injury," as used within the context of the crime of battery, is not

synonymous with physical harm. Our Supreme Court explained this principle in *People v. Rocha* (1971) 3 Cal.3d 893:

> "A battery must be contemplated, but only an 'injury' as that term is used with respect to a battery need be intended. 'It has long been established, both in tort and criminal law, that "the least touching" may constitute battery. In other words, *force* against the person is enough, it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark.' [Citation.] [¶] 'The "violent injury" here mentioned is not synonymous with "bodily harm," but includes any wrongful act committed by means of physical force against the person of another, even although only the feelings of such person are injured by the act.' [Citation.]" (*People v. Rocha, supra*, 3 Cal.3d at pp. 899-900, fn. 12; see also *People v. Myers, supra*, 61 Cal.App.4th at p. 335.)

Also, the crime of battery does not require proof that the defendant intended to injure the victim. Battery is a general intent crime. (*People v. Lara* (1996) 44 Cal.App.4th 102, 107 (*Lara*).) "As with all general intent crimes, 'the required mental state entails only an intent to do the act that causes the harm ....' [Citation.] Thus, the crime of battery requires that the defendant actually intend to commit a 'willful and unlawful use of force or violence upon the person of another.' [Citations.] In this context, the term 'willful' means 'simply a purpose or willingness to commit the act ....' [Citation.]" (*Id.* at p. 107.)

We have examined the record and conclude there is ample evidence proving that appellant committed a battery on a correctional officer. Appellant was confined as an inmate in the California Correctional Facility at Tehachapi. The victim, Smith, was a correctional officer. Appellant instigated a cell extraction by refusing to comply with officers' directives. Appellant prepared for a confrontation by covering the light sources, stringing a blanket across the cell, creating a tent-like enclosure around the lower bunk and wrapping his face and hands in cloth. Appellant was hiding within the enclosure when the extraction team members entered the cell. Smith testified that appellant rushed forward and attacked him. Appellant collided with the shield Smith was holding. Smith

8.

testified that appellant was "pushing against me and using his body, twisting. Just fighting against me, basically, is what he was doing." Appellant flailed his arms and tried to punch Smith in the face. Appellant's violent attack on Smith constitutes an offensive touching. His conduct in preparing for the cell extraction, rushing towards and fighting with Smith proves that the touching was willful.

For the foregoing reasons, we reject appellant's challenge to the sufficiency of the evidence and uphold the guilty verdict on count 1.

## II. There Was No Instructional Error.

### A. The trial court properly declined to instruct on accident.

#### 1. Facts.

Appellant asked the court to instruct on the defense of accident with CALCRIM No. 3404. This instruction provides, in pertinent part:

> "[The defendant is not guilty of _____ <insert crime[s]> if (he/she) acted [or failed to act] without the intent required for that crime, but acted instead accidentally. You may not find the defendant guilty of _____ <insert crime[s]> unless you are convinced beyond a reasonable doubt that (he/she) acted with the required intent.]"

The court refused to instruct on accident because there was no evidence to support this defense. It reasoned:

> "But in reviewing the evidence, it's a situation where, although the light was blocked in the cell and there were chemicals agencies thrown into the cell, that certainly could have affected -- along with the lights and chemical agents, it could have affected certain individuals, Mr. Valenzuela. There is no evidence that it did. In fact, the evidence was to the contrary.

> "Once they got in, there was light coming from the outside. People could see each other in the cell. There was nothing that would indicate he had anything in his eyes that would somehow hinder him from being able to see the direction in which he was moving, or anything of that sort, in the course of what took place in the cell, along with the other evidence, is what led up to the physical contact; so I'm going to decline your request. I'm going to reject this special instruction."

9.

## 2. Refusing to instruct on accident was not erroneous because the record does not contain substantial evidence supporting this defense.

Appellant argues that instruction on accident was required because there was substantial evidence supporting this defense. He points to testimony that the correctional officers wore gas masks and that Hurtado tossed a T-16 OC grenade into the cell and then sprayed a MK-9 OC fogger pepper spray. Appellant also points out that Smith did not know how his hand became injured. This argument is unconvincing. As will be explained, the trial court properly declined to instruct on accident because there was no proof that the chemical agents introduced into the cell adversely affected appellant or any evidence indicating that appellant's contact with Smith was accidental.

The trial court must instruct on an affirmative defense, either upon request or sua sponte, whenever the record contains substantial evidence in support of the defense unless the defense is inconsistent with the defendant's theory of the case. (*People v. Salas* (2006) 37 Cal.4th 967, 982.) In this context, substantial evidence has been defined as "evidence sufficient for a reasonable jury to find in favor of the defendant .…" (*Ibid*.) If the evidence on a defense is "minimal and insubstantial," instruction need not be given. (*People v. Flannel* (1979) 25 Cal.3d 668, 684.) The trial court's ruling is independently reviewed. (*People v. Sisuphan* (2010) 181 Cal.App.4th 800, 806.)

The defense of accident or misfortune is based on section 26, which provides, in relevant part: "All persons are capable of committing crimes except those belonging to the following classes: [¶]…[¶] … Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence." (§ 26.) "The accident defense is a claim that the defendant acted without forming the mental state necessary to make his actions a crime." (*People v. Gonzales* (1999) 74 Cal.App.4th 382, 390 (*Gonzales*).)

Deciding if the trial court erred by refusing to instruct on accident turns on whether appellant offered evidence sufficient for a reasonable jury to find that his contact

10.

with Smith was accidental.  We agree with respondent that the record does not contain evidence supporting this defense.  There was no evidence showing that appellant was adversely affected by the chemical agents that were introduced into the cell.  Appellant did not cough or otherwise indicate distress.  He did not complain of burning eyes or of any other injury.  The nurse who examined appellant did not observe any physical symptoms typically associated with exposure to pepper spray.  Appellant's eyes were not swollen, red or tear stained.  Appellant was not coughing or having difficulty breathing.  He was not dizzy or disoriented.  Appellant's barricade and wrappings succeeded in protecting him from the chemical agents introduced into the cell.

There also is no evidence showing that appellant slipped or otherwise accidentally stumbled into Smith.  Smith testified that appellant's eyes were not covered by the white shirt that he had wrapped about his face.[6]  Smith also testified that appellant lunged toward him, pushed against him and tried to hit him.  Since the crime of battery does not require proof of injury, the fact that Smith could not exactly pinpoint how the injury occurred does not support a reasonable inference of accident.  Appellant's argument that Smith's injury could have arisen accidentally is premised on speculation, not reasonable inference derived from trial evidence.

Appellant's reliance on *Lara*, *supra*, 44 Cal.App.4th 102 and *Gonzales, supra,* 74 Cal.App.4th 382 is misplaced.  Both of these cases are factually inapposite.  In *Lara*, the victim testified that she grabbed the back of the defendant's shirt and he "turned around to free himself from her grasp and hit her in the nose by accident." (*Lara, supra*, 44 Cal.App.4th at p. 106.)  In *Gonzales*, the victim and two of the defendant's family members testified that the victim's injuries were caused when she was accidentally struck

---

**6**    Hurtado testified that appellant had covered his entire face with a towel. However, Hurtado did not enter the cell.  Smith was close to appellant and was able to see that appellant's eyes were uncovered.

11.

by a bathroom door. (*Gonzales, supra*, 74 Cal.App.4th at pp. 385-386.) By contrast, in this case there was undisputed testimony from Smith that appellant rushed towards him and attacked him. Appellant collided into Smith's shield and then forcefully pushed against Smith. Appellant tried to punch Smith and flailed his arms inside the small cell. There was no testimony from appellant or anyone else that his contact with Smith was accidental.

Accordingly, we conclude that the trial court properly declined to instruct on accident because the record does not contain substantial evidence supporting this defense. It necessarily follows that appellant's federal constitutional rights to due process and a fair trial were not infringed by the instructional omission.

**B.     The trial court properly declined to instruct on unconsciousness and involuntary intoxication.**

### 1.     Facts.

Defense counsel requested instruction on involuntary intoxication (CALCRIM No. 3427) and unconsciousness (CALCRIM No. 3425) based on the discharge of chemical agents into appellant's cell.

The prosecutor argued that the evidence did not support either instruction. She also argued that involuntary intoxication instruction did not apply because it was designed to be given only when the intoxication occurred without any fault on the part of the intoxicated person.

The trial court refused to instruct on involuntary intoxication, reasoning: "… I don't think there is really enough evidence of this Court's giving involuntary intoxication instruction either. There is really no evidence of the actual state of intoxication, if any, that there was on Mr. Valenzuela. [¶] In fact, the evidence is essentially to the effect that he guarded from being intoxicated by virtue of putting the materials over his mouth, towels up, things of that sort, so that the chemicals couldn't get to him." The court refused to instruct on unconsciousness because it "wouldn't apply unless I was

considering and gave the other instruction.  There was some evidence he reached some level of intoxication."

> ### 2.  Refusing to instruct on involuntary intoxication and unconsciousness was proper because the record does not contain substantial evidence supporting this defense.

As previously discussed, the trial court must instruct on an affirmative defense, either upon request or sua sponte, whenever the record contains substantial evidence in support of the defense unless the defense is inconsistent with the defendant's theory of the case.  (*People v. Salas, supra,* 37 Cal.4th at p. 982.)  Appellant argues the record contained substantial evidence supporting the defenses of involuntary intoxication to unconsciousness.  He relies on Hurtado's testimony that he introduced pepper spray into the cell "to disorient [appellant] in case he was okay in there, because it causes irritation to the eyes."  Appellant argues it was a question for the jury to determine "whether and to what degree the chemical agents deployed into the cell" affected his mental state.  We disagree.  The trial court correctly determined that there was insufficient evidence to justify instruction on the defenses of involuntary intoxication or unconsciousness.

The record does not contain any evidence proving that the chemical agents introduced into appellant's cell caused intoxication or unconsciousness.  Cich testified that the effects of MK-9 OC fogger include coughing, sneezing, chest tightness, sensations of irritation and burning.  Cich did not know if the MK-9 OC fogger had an anesthetic effect.  Hurtado testified that a T-16 OC grenade causes coughing.  Hurtado testified that the effects of a T-16 OC grenade are "physical only" and he is not aware of "any effects other than physical effects."

Also, there was evidence showing that appellant avoided the harmful effects of the chemical agents by covering his face and barricading himself into his bunk behind blankets and sheets.  Appellant did not cough or exhibit any difficulty breathing after the

13.

chemical agents were dispensed into his cell. A nurse examined appellant after the cell extraction. She did not observe any injuries on appellant other than a few abrasions.

In sum, there was no evidence in the record indicating that the chemical agents caused intoxication or unconsciousness and no evidence that appellant was physically or mentally impaired by the agents. The record does not contain substantial evidence from which a reasonable jury could have concluded that appellant was either involuntarily intoxicated or unconscious when the assault occurred. Therefore, the trial court properly refused to instruct on these defenses. Appellant's federal constitutional rights to due process and a fair trial were not infringed by the instructional omission.[7]

## III. The New Trial Motion Was Properly Denied.

### A. Facts.

On August 2, 2011, appellant filed a motion for new trial based on juror misconduct. The motion was supported by declarations of Juror Nos. 2 and 12. Both of these jurors declared that "[a]t no time during deliberations was I convinced beyond a reasonable doubt that [appellant] was guilty of the charged offenses and/or enhancements." Both jurors also averred that they wrote questions to be given to the judge for further instruction on the law but the foreperson refused to forward the questions and said that he would not be asking any questions. Juror No. 12 averred that the foreperson entered the deliberation room and announced that appellant "is already in prison anyway, so what are the odds that he didn't do the battery?" They averred that when Juror No. 12 said that appellant was not guilty, the foreperson angrily screamed that "he would not accept a hung jury and we would be here all day if there was no guilty

---

[7] This determination renders moot the Attorney General's argument that instruction on involuntary intoxication was properly denied because a fundamental criterion underlying this defense is the defendant's lack of fault and, in this case, appellant was blameworthy.

verdict because he would not come back for further deliberations. So find him guilty so we can go home." They both averred that the deliberations took place while not all 12 jurors were present. Juror No. 12 averred that appellant's status as an inmate and his act of leaving the courtroom during trial was discussed during deliberations. Juror No. 2 averred that the foreperson and another juror discussed "matters the court ordered to not be discussed during deliberations." Both jurors averred that they did not know they could report the foreperson's conduct to the judge. Finally, Juror No. 2 averred that she suffered a misdemeanor petty theft conviction in 2003 but did not disclose this conviction during voir dire due to its age.

The prosecutor opposed the new trial motion and filed evidentiary objections to portions of the declarations.

Hearing on the new trial motion was held on September 27, 2011. The trial court denied the motion in a lengthy oral ruling. The court made findings on each of the averments contained in the jurors' declarations.

The trial court found that the averments by Juror Nos. 2 and 12 that they never thought appellant was guilty were inadmissible.

The trial court admitted the jurors' averments that the foreperson refused to forward their written questions "is something certainly I can consider." The trial court found there was no evidence concerning the information that was requested by the jurors and the jurors did not directly ask the court any questions despite having been provided with multiple opportunities to do so.

The trial court found that the foreperson violated an admonition of the court when he said that appellant left the courtroom because he was guilty. The court gave this event "very little weight" because appellant "should not be able to profit … by his own wrongdoing .…"

15.

The trial court found that averments recounting statements made by the foreperson concerning appellant's guilt were inadmissible because they reflected the foreperson's subjective reasoning process. It found that averments concerning the interactions between the jurors and foreperson were inadmissible. It found that averments concerning the foreperson's demeanor and his statement that he would not accept a hung jury to be reflections of heated juror deliberations. Also, "[t]here is no evidence, nor should there be, as to how it might have impacted other jurors. It's simply as to the bias or the prejudice of the foreperson coming into the deliberations in this particular case."

The trial court found the jurors' averments that deliberations took place when less than 12 jurors were present were admissible and "evidence[s] some misconduct." Yet, "[t]here is no evidence as to what was discussed or how it might evidence some bias by any of the jurors .… [T]here was nothing … that it resulted in some bias against the defendant other than being a violation of the admonition .…"

The trial court determined that the jurors did not commit misconduct by discussing appellant's status as an inmate because this was an element of the charged crime. Also, "there is nothing in the declaration that references or demonstrates to the Court that the discussions as to his status as an inmate reflected some sort of bias that somehow impacted one or more of the jurors."

The trial court found that the jurors were polled after the verdict was read. They had an opportunity to report the foreperson's misconduct or "express any issues they had" with the verdict.

Finally, the trial court found that Juror No. 2's failure to disclose her prior petty theft conviction was misconduct. Yet, there was nothing indicating that the failure to disclose the conviction somehow biased the juror in reaching a decision in the case. Therefore, "it has very little weight in deciding this motion."

The trial court ruled as follows:

16.

"So ultimately, as I indicated, I think there is a great deal in the declarations that's not admissible.… [¶]…[¶] … There is still the fact that there was misconduct, there was failure to follow admonitions, as I've discussed. [¶] But in this particular case, in evaluating all these acts, as we have discussed, the admissible acts, the admissible conduct that occurred that I can consider for this purpose, but whether it's singularly or all together, I do not find that there was prejudice in this particular case. [¶] To the extent that I could say that there was a likelihood of bias in this particular case, that it was substantial, I simply can't find that based on the facts of the case based on the evidence before me, which is the admissible portion of the declarations. [¶] I'm going to deny the motion for a new trial at this time based on those findings."

## B.   Denial of the new trial motion was proper.

Appellant argues that the jury misconduct was prejudicial and the trial court erred by denying the new trial motion.  This argument is unconvincing.

### 1.   Applicable legal standards.

"An accused has a constitutional right to trial by an impartial jury.  [Citations.] An impartial jury is one in which no member has been improperly influenced [citations] and every member is '"capable and willing to decide the case solely on the evidence before it"' [citations]."  (*In re Hamilton* (1999) 20 Cal.4th 273, 293-294.)  Juror misconduct occurs when there is a direct violation of the juror's oaths, duties or instruction.  (*Id.* at p. 294.)  Misconduct also occurs when a juror receives outside information concerning the case or shares improper information with other jurors.  (*Ibid.*) Yet, "with narrow exceptions, evidence that the internal thought processes of one or more jurors were biased is not admissible to impeach a verdict."  (*Ibid.*)   "[W]here a verdict is attacked for juror taint, the focus is on whether there is any *overt* event or circumstance, 'open to [corroboration by] sight, hearing, and the other senses' [citation], which suggests a *likelihood* that one or more members of the jury were influenced by improper bias." (*Ibid.,* fn. omitted.)

Section 1181 permits the trial court to grant a motion for new trial when the jury has "been guilty of any misconduct by which a fair and due consideration of the case has

been prevented" (*id.*, subd. 3) or has decided the verdict "by any means other than a fair expression of opinion on the part of all the jurors" (*id.*, subd. 4). When ruling on a new trial motion that is based on juror misconduct, the trial court undertakes a three-step inquiry. First, it must decide if the affidavits supporting the motions are admissible under Evidence Code section 1150.**8** Second, the trial court must determine whether the facts establish misconduct. Third, the trial court must determine if the misconduct was prejudicial. (*People v. Bryant* (2011) 191 Cal.App.4th 1457, 1467.) Juror misconduct raises a rebuttable presumption of prejudice. (*In re Lucas* (2004) 33 Cal.4th 682, 696.) This presumption is rebutted "'if the entire record in the particular case, including the nature of the misconduct or other event, and the surrounding circumstances, indicates there is no reasonable probability of prejudice, i.e., no substantial likelihood that one or more jurors were actually biased against the defendant.' [Citation.]" (*Ibid.; In re Hamilton supra*, 20 Cal.4th at p. 296.)

The trial court's ruling on a new trial motion is reviewed under the abuse of discretion standard and will not be reversed unless a manifest and unmistakable abuse of discretion is clearly apparent. (*People v. Bryant, supra*, 191 Cal.App.4th at p. 1467.) When presented with the new trial motion based on the ground of juror misconduct, "the reviewing court has a constitutional obligation to determine *independently* whether the misconduct prevented the complaining party from having a fair trial." (*People v. Nesler* (1997) 16 Cal.4th 561, 582, fn. 5.) The appellate court "accept[s] the trial court's

---

**8** Evidence Code section 1150, subdivision (a) provides: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."

credibility determinations and findings on questions of historical fact if supported by substantial evidence. [Citations.] Whether prejudice arose from juror misconduct, however, is a mixed question of law and fact subject to an appellate court's independent determination. [Citations.]" (*Id.* at p. 582.)

## 2. Nondisclosure of Juror No. 2's misdemeanor conviction.

The trial court found that Juror No. 2's failure to disclose her prior petty theft conviction was misconduct but there was no evidence demonstrating that the omission reflected juror bias. Therefore, the court gave it "very little weight in deciding this motion."

Appellant argues that Juror No. 2's omission "undermined the jury selection process." His contention is unavailing. When a juror has concealed information, prejudice is determined by examining if the omission was made to conceal a biased state of mind. (See *In re Hamilton, supra*, 20 Cal.4th at pp. 294-295.) Here, there is nothing indicating that failure to disclose the prior conviction indicated any bias against appellant. There is no evidence before us that Juror No. 2 intentionally failed to disclose the 10-year-old misdemeanor conviction in an effort to conceal a bias or prejudice. The trial court correctly gave this averment little weight.

## 3. Deliberations with less than 12 jurors present.

The trial court found that misconduct occurred when deliberations took place while less than 12 jurors were present. The court then found that the record did not contain any evidence concerning the substance of these deliberations or any evidence of bias against appellant. Therefore, the misconduct was not prejudicial.

We discern no error in the trial court's reasoning or result. The declarations by Juror Nos. 2 and 12 did not contain any information about the content of deliberations that occurred when less than 12 jurors were present. They set forth nothing more than the bare fact that deliberations took place when less than 12 jurors were present. There is no

evidence that the jurors deliberated when less than 12 jurors were present because they were biased against appellant. There is no proof of bias against appellant. We agree with the trial court that the misconduct was not prejudicial.

### 4. The jury foreperson's conduct/statements.

Appellant repeats the averments contained in the jurors' declarations about the foreperson and asserts that these averments proved prejudicial misconduct. This argument suffers from a fatal defect. As set forth *ante* in section III.A., the trial court made an evidentiary ruling that many of the averments concerning the foreperson were not admissible. Also, the trial court separately ruled on each alleged act of misconduct and explained why the misconduct was not prejudicial. Appellant's briefing failed to acknowledge that the trial court found portions of the declarations to be inadmissible.

Appellant did not challenge the trial court's evidentiary rulings and did not object to the trial court's rulings on the averments concerning the foreperson. Therefore, any potential appellate challenges to the trial court's ruling on these points "are deemed to have been waived or abandoned." (*Title Guarantee & Trust Co. v. Fraternal Finance Co.* (1934) 220 Cal. 362, 363.) Appellant bears the burden of raising an issue on appeal and showing reversible error by legal argument on the point with citation of authorities. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 701, pp. 769-770; *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 546 ["it is not this court's function to serve as … backup appellate counsel"].) We reject appellant's perfunctory and generalized claim that the foreperson committed prejudicial misconduct as insufficiently undeveloped. (*People v. Williams* (1997) 16 Cal.4th 153, 206; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1116, fn. 20.)

We have independently reviewed the trial court's rulings concerning averments about the jury foreperson. The trial court properly determined that the foreperson engaged in misconduct in two respects: (1) by refusing to relay jury questions to the

court; and (2) by saying to other jurors that appellant left the courtroom because he was guilty. We agree with the trial court that this misconduct was not prejudicial.

The record does not support a substantial likelihood of prejudice against appellant. The jurors did not identify the nature of the questions that the foreman refused to relay to the court. The trial court instructed the jurors that any questions could be submitted to the court in writing (CALCRIM No. 3550) and Juror Nos. 2 and 12 failed to take advantage of this opportunity. Without knowing the content of the questions, we cannot find that the foreperson's refusal to relay the questions to the trial court was the product of a bias against appellant.

We agree with the trial court that appellant is not entitled to a new trial because the foreperson improperly referenced appellant's unauthorized flight from the courtroom as proof of guilt. The trial court reasoned that appellant "should not be able to profit … by his own wrongdoing." In *In re Hamilton, supra*, 20 Cal.4th 273, our Supreme Court wrote that a defendant can never overturn a verdict by instigating an incident that influences the jurors, as follows: "At the outset, we question whether a convicted person can ever overturn the verdict on grounds that persons *acting in his behalf* deliberately sought to influence the jury. Certainly no such claim could ever be valid where the *accused himself* had instigated the incident; a party cannot profit by his or her own wrongdoing." (*Id*. at p. 305.) Appellant cannot flee from the courtroom and then claim reversible error because a juror mentioned his wrongful conduct during deliberations.

This court has independently reviewed the record as a mixed question of law and fact. We conclude the trial court did not abuse its discretion when it determined that the irregularity that occurred in this case was not prejudicial. The standard we apply "is a pragmatic one, mindful of the 'day-to-day realities of courtroom life' [citation] .…" (*In re Hamilton, supra,* 20 Cal.4th at p. 296.) In this case, the presumption of prejudice was sufficiently rebutted. The entire record, including the nature of the misconduct and the

21.

surrounding circumstances, indicates there is not a substantial likelihood that one or more of the jurors were actually biased against appellant.  (*Ibid.*)  Therefore, we hold that the new trial motion was properly denied.

## DISPOSITION

The judgment is affirmed.


_____

LEVY, Acting P.J.

WE CONCUR:


_____

GOMES, J.


_____

FRANSON, J.